# NEW CASTLE BRIDGE COMPANY *v.* DOTY.

[No. 20,759. Filed December 13, 1906. Rehearing denied March 15. 1907.]

1. APPEAL. — *Briefs.* — *Waiver.* — A failure by appellant, in its brief, to make any specific objection to the complaint, is a waiver of such objections. p. 262.

2. NEGLIGENCE.—*Master and Servant.—Assumption of Risk.— Contracts.*—The doctrine of assumed risk in negligence cases rests upon contract, express or implied. p. 263.

3. SAME.—*Master and Servant.—Assumption of Risk.—Scope of Employment.—Outside Work.*—The servant, when ordered to do work outside of the scope of his employment, does not assume the risks of unsafe ways, works and machinery, unless the defects are known or obvious. p. 264.

4. SAME.—*Master and Servant.—Assumption of Risk.—Scope of Employment.—Ways and Works.*—The servant does not assume the risk of the master's negligence in furnishing unsafe and unsuitable places in which to work. p. 264.

5. MASTER AND SERVANT.—*Assumption of Risk.—Work Outside of Scope of Employment.*—Where a servant was ordered temporarily to assist in shearing some iron, and while engaged in such work a pile of iron, the danger from which he neither saw nor appreciated, fell upon him causing severe injury, such work being outside of the scope of his employment, he cannot be held to have assumed such risk. p. 264.

6. NEGLIGENCE.—*Proximate Cause.—Piling Iron.*—Where sheets of iron were piled in a single layer, without lateral support, near a machine for shearing iron, at which many men were working, such negligence in piling such iron was the proximate cause of an injury to a servant working at such machine, where such iron fell and injured him. p. 265.

7. TRIAL. — *Instructions.* — *Details.—Nondirection.*—An instruction that the plaintiff should recover in a negligence case if he has proved, by a preponderance of the evidence, the allegations of his complaint, is not bad because it does not set out the facts stated in such allegations, nor include the elements of assumed risk and contributory negligence. p. 266.

8. SAME. — *Instructions.* — *Nondirection.—Remedy.*—Where the court's instruction is general and omits the details, it is the

duty of the party desiring such details to present a proper instruction including same, and present it to the trial judge. p. 266.

9.  TRIAL.—*Instructions.—Separate Issues.*—An instruction, in a negligence case, omitting the questions of assumption of risk and contributory negligence, is not erroneous, where such questions are covered in other instructions.    p. 266. ·

10.  SAME. — *Instructions. — Burden of Proof.—Negligence.*—An instruction, in a negligence case, that "the plaintiff is not bound to prove that he was free from fault in receiving his injuries; the question of contributory negligence is now a matter of defense, and the burden is cast upon the defendant to prove by a fair preponderance of the evidence that the plaintiff * * * was guilty of some act or acts of negligence that contributed to his injuries," is not erroneous.    p. 267.

11.  SAME.—*"Burden of Proof."—Meaning.*—The phrase "burden of proof" implies that the party having the affirmative of an issue must show a preponderance of the whole testimony in favor of such issue, and the term applies to the defendant in proving the contributory negligence of the plaintiff just the same as to the plaintiff in proving defendant's negligence. p. 267.

12.  SAME.—*Burden of Proof.—Weight of Evidence.*—Burden of proof is a matter of law for the court, and weight of evidence is a question of fact for the jury.   p. 268.

13.  SAME. — *Instructions. — Burden of Proof.—Negligence.*—An instruction, in a negligence case, that "the burden is cast upon the defendant to prove by a fair preponderance of the evidence" the contributory negligence of the plaintiff, is a correct statement of the law, and does not imply that the jury may not consider all of the evidence.    *M. S. Huey Co.* v. *Johnston,* 164 Ind. 489, and *Town of Winamac* v. *Stout,* 165 Ind. 365, followed. *Indianapolis St. R. Co.* v. *Taylor,* 158 Ind. 274, *Pittsburgh, etc., R. Co.* v. *Lightheiser,* 163 Ind. 247, and *Pittsburgh, etc., R. Co.* v. *Collins,* 163 Ind. 569, distinguished. *Cleveland, etc., R. Co.* v. *Miles,* 162 Ind. 646, disapproved.   p. 268.

14.  SAME.—*Instructions Requested, Covered by those Given.*—Where requested instructions are already covered by those given, they should be refused.    p. 270.

15.  SAME. — *Instructions. — Refusal to Give. — Facts Covered Denied by Answers to Interrogatories.*—Where the court refused to give requested instructions covering a certain fact in the case. upon which there was some evidence, the answers to

New Castle Bridge Co. *v.* Doty—168 Ind. 259.

the interrogatories to the jury denying the existence of such fact renders harmless the refusal to give such instructions. p. 271.

16. PLEADING. — *Complaint.* — *Amendments After Trial.*—There is no error in permitting plaintiff, at the close of the evidence, to amend his complaint so as to show that the lower blade of an iron shears was defective instead of the upper, as alleged originally, no prejudice to defendant being occasioned thereby. p. 271.

From Morgan Circuit Court; *Joseph W. Williams,* Judge, *pro tem.*

Action by Arthur W. Doty against the New Castle Bridge Company. From a judgment on a verdict for plaintiff for $5,000, defendant appeals. Transferred from Appellate Court (see 37 Ind. App. 84) under cl. 1, §1337j Burns 1901, Acts 1901, p. 565, §10. *Affirmed.*

*Elmer E. Stevenson* and *Oscar Matthews,* for appellant. *Charles F. Remy, John W. Donaker* and *Renner & McNutt,* for appellee.

HADLEY, J.—Appellee recovered a judgment for personal injuries received through the alleged negligence of appellant. Appellee was employed in appellant's yards, and on the day of the injury was ordered to go into the shop and assist in shearing a large steel plate, and while so engaged was hurt by the falling of a pile of angle irons upon his leg. The negligence charged is the permitting of the shears to become and remain dull, the improper piling of the angle irons, and in permitting the angle irons, so improperly piled, to be and remain concealed in the shops at the place where the plaintiff was ordered to assist in the work of shearing. A demurrer to each of the two paragraphs of complaint was overruled, as was also appellant's motion for judgment on the answers to interrogatories, and for a new trial.

Appellant, under its points and authorities, has stated many general propositions of law, but nowhere in its brief

has it suggested any specific objection to the complaint. We have, therefore, treated the assignment on the rulings upon the demurrers to the complaint as being waived.

It is alleged in the complaint that the plaintiff was employed to work in the yard, and was ordered by the defendant to go into the shop, where he was not acquainted, and assist in shearing a steel plate; that the shears pointed to the north; that the steel plate to be sheared was twenty feet long, four feet, four inches wide, and five-sixteenths of an inch thick; that the plate was suspended by chains to a hoist and rested immediately to the east of the shears; that it required from eight to ten men to do the shearing, which was accomplished by half the men pulling and half pushing the plate steadily and smoothly through the shears, from the north to the south; that the cuts were six inches wide and when a cut was finished it dropped to the west of the shears and the plate returned to the north and was again pulled and pushed through the shears as before.

The answers to the interrogatories show that the appellee is a man of average intelligence, good eyesight, and experienced in working with and about iron. He had been for three weeks employed by appellant as a general workman in the yard, and on one previous occasion had been sent into the shop to assist in shearing steel plates, but helping to shear steel plates was not within the scope of his employment. On the occasion of his injury, the appellee, with others from the yard, was sent into the shop to help shear. When they arrived the plate was in position for shearing. The appellee took his place at the southeast corner of the plate. At the time there were two single tiers of angle irons, twelve to sixteen inches high, on the floor of the shop, and east of the shears, and which the appellee could not see by looking down. The angle irons were improperly piled and the appellant knew it, and they were piled by order of the shop-foreman. It was the custom of the shop to pile

irons east of the shears to await removal to the bolting rack. The appellee had selected his place at the plate, had helped to cut one strip, and if he had made a close inspection might have avoided injury. The shop in the vicinity of the shears was amply lighted. The angle irons extended eastward from the shears to a point east of the plate being sheared. Appellee's injury, by the falling of the angle irons upon his leg, could have been anticipated by the appellant.

From the averments of the complaint and the facts disclosed by the answers to interrogatories, appellant argues that the appellee's injuries from the falling irons were an assumed risk of employment. Its contention being that since it was common to pile the irons by the shears to remain only temporarily, and until they could be removed by other employes to the bolting rack, they formed only a transient, shifting condition usual to all similar establishments, and therefore a danger that all employes must be held to have assumed. If the appellee had been employed to work in the shop and was familiar with the conduct of the business therein, and such a piling of iron was customary and necessary to a reasonable and economical dispatch of business, then we should have a very different question. But the appellee was employed to do general work in the yard, the evidence shows, to pile iron, load and unload cars, and such other work as was required to be done about the yard.

An assumed risk rests upon contract. When the appellee undertook with appellant to do general work in the yard, he impliedly agreed, as part of his contract of employment, to assume the risk, that is, take his chance

2. of all known or apparent perils that are usually incident to the place where, and the business in which, he is to engage. *Brazil Block Coal Co.* v. *Gibson* (1903), **160** Ind. 319, 98 Am. Rep. 281; *Wabash R. Co.* v. *Ray* (1899), **152** Ind. 392.

But the appellee's assumption of risk was no broader than his contract. He could not have looked to his employer for protection against an unsafe place, or
3. unsuitable appliance, beyond the general scope of his employment, had he voluntarily gone outside; and when ordered, as in this case, by his employer, to go into the shop and do unfamiliar work, in an unfamiliar place, with a different set of fellow workmen, and receiving no notice to the contrary, he had the right to assume that the new working place was safe and in good condition, and, as against a danger that was not open, or of which he had no knowledge, actual or constructive, he assumed no risk. In such case, if injured by reason of the working place's being negligently obstructed by the appellant, the appellee, being himself in the exercise of due care, was entitled to recover. *Brazil Block Coal Co. v. Hoodlet* (1891), 129 Ind. 327, 336; *Republic Iron & Steel Co.* v. *Ohler* (1903), 161 Ind. 393; *Cincinnati, etc., R. Co.* v. *Madden* (1893), 134 Ind. 462; *Louisville, etc., R. Co.* v. *Hanning* (1892), 131 Ind. 528, 31 Am. St. 443.

Neither does the servant in his contract assume
4. the increased hazard of his master's negligence in furnishing an unsuitable and an unsafe place to work.

Applying these principles to the facts in this case, appellant's contention cannot be sustained. It is shown that the appellee had assisted in shearing in the shop
5. but once before. The angle irons had been piled immediately east of the shears, in an improper manner, by the direction of the shop foreman, and with the knowledge of the appellant, and in such a way that the appellee's injury from their falling on him could have been anticipated by the appellant. The evidence shows, without dispute, that the improper piling consisted of placing one angle iron on top of another in a single unsupported tier, while the proper, safe, and customary way of piling was

to place them in double interlocking tiers. Besides, the answers show that when the appellee, by the order of the appellant, arrived at the shears, the steel plate was mounted ready to shear, and he did not know that the angle irons had been piled near the shears. He could not see them when he took his place at the plate by looking down, and, according to the testimony of at least two witnesses, he could not see the irons because the plate they were about to shear was over them, though the irons did extend east of the plate. Neither does it appear that the appellee had, nor, by the exercise of reasonable diligence, might have had, knowledge of their presence until they fell and injured him. From these facts the jury was warranted in finding not only that the appellee did not assume the risk, but also that the appellant was guilty of the negligence complained of.

Appellant's counsel also insist that if the appellant was guilty of negligence in permitting the angle irons to be and remain piled by the shears, such negligence, as

6. shown by the evidence and findings, was not the proximate cause of the appellee's injuries. It is contended that it was the negligence of the appellee and his fellow workmen in allowing the plate that was being sheared to tip and strike the irons that constituted the proximate cause of the appellee's accident. This contention cannot be allowed. There is no finding nor evidence to show that the tipping was not a usual and necessary thing to facilitate the cutting by the shears. Indeed, there was testimony, by at least two witnesses, that it was necessary in passing the plate through the shears to move it up and down to dislodge it from the shears; and, under the findings and evidence, we can by no means say, as a matter of law, and against the general verdict, that the movement of the plate's edge upward and downward was negligence, or even unnecessary. Under the facts as they appear, it was the piling of the angle irons in an improper manner and in a place where they would be unseen and

dangerous to the workmen engaged in shearing, that consti-
tuted the first, the originating, and immediate cause of the
appellee's injuries. *P. H. & F. M. Roots Co.* v. *Meeker*
(1905), 165 Ind. 132.

Complaint is made of the second instruction because it
informed the jury that the appellee might recover if he
had proved by a fair preponderance of the evidence

7.  the material allegations of one or both paragraphs
of the complaint. It is claimed that this instruc-
tion is bad for two reasons: (1) Because it does not set
forth what constitutes the material allegations of the com-
plaint; (2) it omits the elements of assumed risk and con-
tributory negligence. Neither of these objections is ten-
able. It is not erroneous to express an instruction in gen-
eral terms, if the expressions employed are correct within
their own limitation. It is only when an instruction pur-
ports to state specifically all the material averments of a
pleading that it becomes erroneous to leave one or more of
such averments unstated. The rule is well settled that
when an instruction is good as far as it goes, but fails to
cover all the details as fully and specifically as might

8.  have been done, the omission of details cannot be
treated as error unless the party complaining pre-
pared, and, at the proper time, requested the court to give
a more specific charge. *Fitzgerald* v. *Goff* (1884), 99 Ind.
28, 40; *Ireland* v. *Emmerson* (1884), 93 Ind. 1, 6, 47 Am.
Rep. 364; *Dyer* v. *Dyer* (1882), 87 Ind. 13, 18; *Louis-
ville, etc., R. Co.* v. *Grantham* (1885), 104 Ind. 353, 358;
*Wells* v. *Morrison* (1883), 91 Ind. 51, 60.

Besides, the doctrines of assumed risk and of con-

9.  tributory negligence, so far as applicable to the facts
in evidence, were fully and correctly stated in other
instructions given.

Appellant's chief assault is made on number eight, given
by the court. It is as follows: "I instruct you that as

the law now exists in Indiana, the plaintiff is not bound to prove that he was free from fault in receiving his injuries. The question of contributory negligence is now a matter of defense, and the burden is cast upon the defendant to prove by a fair preponderance of the evidence that the plaintiff, Arthur W. Doty, was guilty of some act or acts of negligence that contributed to his injuries, or that he did not use such care or caution as a reasonably prudent person would have used under the circumstances, before this action can be defeated for contributory negligence alone, if he has otherwise proved his case." In a form more concrete the instruction may be stated thus: "Contributory negligence being now a matter of defense, the burden of proving it rests upon the defendant, and, before the plaintiff's action can be defeated for contributory negligence alone, there must be proved by a preponderance of the evidence some negligent act of the plaintiff that contributed to his injury." The charge complained of is a little unfortunate in form of expression, but we are unable to see any objection to the legal principle involved. Being a matter of defense, the burden, that is, the duty or obligation, of proving contributory negligence was cast upon the defendant, and to make the defense successful it was required to maintain or establish it by a fair preponderance of all the evidence in the case. These principles are elementary. There is nothing mysterious or peculiar about the term "burden of proof." It stands simply for what is ordinarily meant by the use of the words. In pleading, the party who assumes the affirmative of the issue or proposition has thereby, under a rule of law, laid upon him the necessity of maintaining the issue or proposition to the end, by being able at the conclusion of the evidence to point to a greater weight of evidence in support of the issue or proposition than appears against it; and this is all that the term "burden of proof" implies. Furthermore, when applied to the

question of contributory negligence, the rule operates in precisely the same way as in the determination of any other fact or issue by the evidence, whether the affirmative is held by the plaintiff or by the defendant.

But the burden of proof and weight of evidence should not be confounded. They have radically different meanings. The former is a question of law for the court, and the latter a question of fact for the jury.

It is, however, insisted by appellant's counsel that the expression, "the burden is cast upon the defendant to prove by a fair preponderance of the evidence" the plaintiff's fault, is erroneous, because it, in effect, tells the jury that the appellant must prove the fact by its own evidence; and in support of its contention counsel chiefly rely upon the ruling in *Indianapolis St. R. Co. v. Taylor* (1902), 158 Ind. 274. There is no reasonable basis for the insistence. The language quoted above is a correct expression of the law. Having undertaken to defeat the appellee's claim by showing that his own carelessness contributed to his injuries, it was incumbent upon the appellant, as a rule of law, to establish the truth of the appellee's negligence by showing such a condition in the evidence as a whole as would show that the weight of the entire body of the evidence preponderates in support of the proposition. There is no reason for saying that the phrase, "the burden is cast upon the defendant to prove by a preponderance of the evidence," is equivalent to saying that it must produce all the evidence that may be considered in making such proof. The party having the burden of proof in any issue, in any case, and who must secure a preponderance, on penalty of failure, has a right to have the jury explore the entire field of the evidence, and make available in his behalf, not only the evidence produced by the party himself, but also all the evidence in his favor that may have been produced by the opposite party, directly or otherwise, either express, or that may arise by

implication from facts proved by the opponent, or from facts and circumstances otherwise appearing in the case. In other words, in determining any issue or fact in a judicial proceeding, all items of evidence, for or against, whether brought into the case by this party or that, should be properly credited by the jury, and, when so credited, if the whole evidence preponderates in weight in favor of the party having the burden of proof, he wins, but, if it appears evenly balanced, or preponderates against him, he loses, and any instruction that conveys a different conception will be either erroneous or misleading. *Fay* v. *Burditt* (1882), 81 Ind. 433, 443, 42 Am. Rep. 142; *Carver* v. *Carver* (1884), 97 Ind. 497, 511. The language in *Indianapolis St. R. Co.* v. *Taylor, supra,* cannot fairly be construed as supporting appellant's theory, that the instruction complained of was calculated to mislead the jury into believing that the appellee's contributory negligence could only be proved by evidence produced by the appellant.

The instruction condemned in the case last cited, when requested by the defendant, read thus: "If it affirmatively appears from the evidence that the plaintiff did not use due care to discover the approach of the cars on the defendant's track before he attempted to cross the same, he cannot recover for any alleged negligence of the defendant." Before giving, the court modified the same by adding: "But the burden of proving contributory negligence on the part of the plaintiff rests on the defendant." It will be observed that the instruction as requested was absolutely correct and complete within itself. In effect, it directed the jury that if it affirmatively appeared—that is, if it appeared by a fair preponderance of the evidence—that the plaintiff did not use due care, he could not recover. The first part of the instruction rightly advised the jury that they might look to all the evidence generally for proof of the appellee's contributory negligence, and when the court added, "but the burden of proving contributory negligence on the part

of the plaintiff rests on the defendant," he but added confusion, for then it might reasonably appear to jurors that the concluding, or mandatory sentence, was intended to explain and limit the jury to the evidence introduced by the defendant.

Besides there is nothing held in this case that conflicts with the holding in the case of *Indianapolis St. R. Co.* v. *Taylor, supra.* It was there said on page 279: "By another instruction, the court correctly informed the jury that the contributory negligence, if any, of appellee was a defense to the first and second paragraphs of the complaint, and the burden of proving the same was upon the appellant." In the case at bar the jury could not possibly have been misled, because the court in other numbers fully and specifically covered the question of proving contributory negligence. In number fourteen the rule was stated more favorably to the appellant than it had a right to have it.

Since the case of *Indianapolis St. R. Co.* v. *Taylor, supra,* and claiming to be influenced thereby, a question relating to the proper mode of instructing the jury concerning contributory negligence has arisen in the following cases, besides the one at bar: *Cleveland, etc., R. Co.* v. *Miles* (1904), 162 Ind. 646; *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1904), 163 Ind. 247; *Pittsburgh, etc., R. Co.* v. *Collins* (1904), 163 Ind. 569; and perhaps some others.

The last two cases cited rest upon their own peculiar facts. In the case of *Cleveland, etc., R. Co.* v. *Miles, supra,* there appears a remark, on page 656, not in accord with the views of the court upon further consideration. We here reiterate and follow the doctrine declared in *M. S. Huey Co.* v. *Johnston* (1905), 164 Ind. 489, and *Town of Winamac* v. *Stout* (1905), 165 Ind. 365, 367.

Of the instructions requested by the appellant the court refused to give six, twenty, twenty-four and twenty-five. Number six related to assumed risks, and was, as to both parties, fully and fairly covered by the court in fourteen. Number twenty related to con-

New Castle Bridge Co. *v.* Doty—168 Ind. 259.

tributary negligence, and every principle it contained was clearly explained to the jury, the true doctrine having been pertinently referred to, at least nine times in instructions given at the request of the appellant.

Numbers twenty-four and twenty-five related to the falling of the angle irons upon appellee, by reason of being struck by the steel plate while being sheared, in consequence of the careless handling of the plate by the appellee and his associates. Even if erroneous, the giving was harmless to the appellant, because it is shown by an answer to an interrogatory propounded to the jury that there was no evidence that the angle irons fell from being struck by the steel plate.

At the close of the evidence appellee was granted leave to amend his complaint, which is here complained of. It was averred, before amendment, that there existed "nicks" in the upper blade that made rough and ragged places on the upper surface of the plate along the cutting line, which projected upward, making it necessary to tilt the plate upward and downward to loosen it, and to facilitate its passage through the shears. The amendment consisted of changing the word "upper" to "lower" and the word "upward" to "downward" so as to make the averments charge that the "nicks" in the lower blade of the shears made rough and ragged places on the lower surface of the plate, which projected downward.

There had been evidence tending to prove defects in the shears, and the effect thereof on the plate while being sheared, at variance with the allegations of the original complaint, and the amendment was requested and granted for the purpose of making the averments conform to the proof as already delivered. The contention was that the defect in the shears produced an irregular, jagged edge or surface to the plate, which caused it to hang and adhere to the shears, so that it had to be tilted upward and downward to free it. The evidence which prompted the amend-

ment showed that such jagged and irregular places were on the under side of the plate, instead of on the upper side.

If the shears were so defective as to produce rough protuberances that would cause the plate to fasten to the shears; so that it had to be tilted to loosen. it, it was wholly immaterial whether such protuberances were on the upper or lower edge of the plate. We cannot see how the same evidence would not be pertinent in one case, as well as the other. Hence the amendment created no change in the issue, nor in the character of the proof.

Furthermore, since the jury found there was no evidence that the angle irons fell on the plaintiff from being struck by the tilted plate, the amendment could not have affected the case, one way or another, or have been in any way prejudicial to appellant. We think, therefore, that the court did not abuse its discretion, conferred by §399 Burns 1901, §396 R. S. 1881, in permitting the plaintiff to amend, and thereby make his pleading conform to his proof. For illustrative cases, see *Burns* v. *Fox* (1888), 113 Ind. 205; *Kohli* v. *Hall* (1895), 141 Ind. 411; *Praigg* v. *Western Pav., etc., Co.* (1896), 143 Ind. 358.

We find no error in the record.   Judgment affirmed.