WARNER *v.* WARNER ET AL.

[No. 15,592.  Filed November 2, 1937.]

*Simmons & Simmons,* and *Sturgis, Stine & Sturgis,* for appellant.

*Eichhorn, Gordon & Edris,* for appellees.

KIME, J.—The complaint for replevin herein was in one paragraph and was answered by a general denial. A jury ultimately returned a verdict in favor of the complainants, the appellees. Judgment was rendered thereon following which the appellant filed a motion for a new trial. This motion was overruled and that action is the error assigned.

The complaint alleged that the appellees were the administrators of the estate of their deceased father; that he was the owner at the time of his death and that they, therefore, as administrators of his estate, were entitled to the possession of three bonds issued by the United States, one of the par value of $5,000.00 and two of the par value of $1,000.00 each, and describing them as to serial number et cetera; that as such administrators they demanded possession of said bonds; that such demand had been refused and that unlawful detention was maintained by the appellant.

The evidence disclosed that the three parties here were brothers and the sons of the deceased and that there was also a daughter surviving. That following the death of the wife and an unmarried daughter the deceased had the appellant and wife move into his farm home. This occurred in 1932 and appellant and his wife continued to live with the father until 1933 when all moved to Bluffton, where they lived until the death of the father January 24, 1934. Early in 1933 there had been an attempt to distribute $9,000.00 in bonds to the four children but this failed. The appellees, to establish their *prima facie* case, introduced evidence to the effect that their father had been the owner of the bonds; that they were the lawfully appointed, duly qualified and

acting administrators of his estate; that appellant had possession of the bonds and that as such administrators they demanded the bonds from the appellant and were met with a refusal. This was all of the material evidence in chief.

The appellant then testified in his own behalf to the effect that after the attempted distribution failed his father directed him to go to the bank (where the bonds were kept in a safety deposit box in the name of the appellant), get the bonds and bring them to their home; that he did this and delivered them to his father; that his father then gave the bonds to the appellant on condition that appellant care for his father the balance of the father's life, see that he had good medical attention and a decent burial. He also introduced in evidence the contract whereby the distribution was attempted and some evidence as to the care he gave his father.

The appellees then introduced evidence to the effect that after the failure of the attempted distribution of the bonds and to the time of his death the father was so enfeebled and infirm that he was incapable of managing his affairs and did not have the capacity to contract and that the appellant as well as all others coming in contact with him knew this to be his condition. That the deceased had suffered a severe illness in 1932; that in May 1933 papers were prepared asking for the appointment of a guardian for him and that after a hearing had thereon in November 1933 a guardian was appointed.

The jury was instructed in writing and returned a verdict in favor of the appellees that they were entitled to the bonds "to the value of $6,500.00." The court rejected this, reread the instructions given, and instructed the jury that the appellees contended that they were entitled to possession of the bonds and that appellant contended he was so entitled and that there

was no "middle ground" and it was for the jury to determine which contention was correct. Whereupon the jury found for the appellees as administrators that they were entitled to the possession of the bonds and that the value of the bonds was $7,000.00.

The grounds of the motion for new trial properly before us are: (1) the court erred in giving to the jury instruction number six requested by appellees; (2) the court erred in giving to the jury each of the instructions numbered fifth, sixth, and seventh on its own motion; (3) the verdict of the jury is contrary to law; and (4) error of law occurring at the trial, in this: that after the jury had retired for deliberation and had deliberated in the jury room the court reread to the jury the instructions.

Instruction numbered six requested by the appellees and given by the court was as follows: "I instruct you that if you are convinced from the evidence that in the month of April, 1933, the decedent, Samuel Warner, did attempt to transfer to the defendant, Henry A. Warner, the title to $9,000.00 in bonds including the bonds in controversy, but are further convinced by the evidence, and from a fair preponderance thereof, that at the time he made such attempt he was so enfeebled and infirm that he did not have the capacity to contract, and that he was incapable of managing his property and estate, and that the defendant knew his condition, then you are instructed that the transaction in which the attempt was made to so transfer the title to such bonds was invalid and of no effect, and the title remained in the decedent." The appellant contends that this instruction is an erroneous statement of the law and prejudicial to him. His position is that until persons have been judicially declared to be insane, contracts made with them are only voidable and not void. This is correct under certain circumstances but the instruc-

tion is much broader and more pregnant than appellant would lead us to believe by his argument. Where an unconscionable advantage is taken of persons of unsound mind before they have been placed under guardianship or declared to be insane by one possessing knowledge of such condition the contract attempted to be entered into is absolutely invalid, void, and of no force or effect. In simple language, there is no contract. Since the appellant knew his father's condition he could not have acted in good faith. Those dealing with persons of unsound mind knowing them to be such can not exercise good faith. There is a rule that persons dealing with those of unsound mind in good faith and parting with valuable consideration are entitled to a disaffirmance and an offer to return to the status quo before a cancellation can be resorted to by the representative of the afflicted. But such is not the situation here and the instruction is not prejudicially erroneous. *Barkley* v. *Barkley* (1914), 182 Ind. 322, 106 N. E. 609; *Thrash et al.* v. *Starbuck, et al.* (1896), 145 Ind. 674, 44 N. E. 543.

The court gave to the jury, on his own motion, the following instruction: "5. The court instructs you that the uncontradicted evidence in this case is that prior to some date in April, 1933, the bonds in question, or the bonds for which the bonds in question were exchanged, were the property of Samuel Warner. The defendant in this action claims the title and the right of possession of the bonds described in the complaint. He bases his claim upon an alleged contract claimed to have been entered into between him and the decedent some time in the month of April, 1933. I instruct you that the burden of proving the alleged contract in which the defendant claims to have acquired the title to the bonds in controversy is upon the defendant, and unless he has established such contract to your satisfaction by a fair preponderance of the evidence you will not be warranted

in finding that any such contract was entered into, nor that the defendant is entitled to possession of the bonds in controversy by virtue thereof." Appellant contends that because the court told the jury that the burden of proving the alleged contract (upon which he relied to establish title and in this case the resulting right of possession) was upon the appellant to establish by a fair preponderance of the evidence that this instruction was consequently so harmful as to necessitate a reversal. Appellant contends that in replevin the burden of proof is always on the one seeking possession by the action. The statute provides that *"When any personal goods are* wrongfully taken, or *unlawfully detained, from the* owner or *person claiming the possession thereof,* or when taken on execution or attachment, are claimed by any person other than the defendant, *the* owner or *claimant may bring an action for the possession thereof."* Acts 1881 (Spec. Sess.) ch. 38, §164, p. 240, §3-2701 Burns 1933, §1198 Baldwin's 1934. (Our italics.)

The complaint alleges that the appellant unlawfully detains personal goods to which the appellees are claiming the right of possession. The answer of general denial says, in effect, these allegations are not true.

The question to be determined is whether or not the complaining party is entitled to the possession of the personal property. Before the complainant would be entitled to the possession two facts must be established, first that the property is unlawfully detained and second that the complaining party is entitled to possession. The appellees here made their *prima facie* case and rested. The appellant then, to establish that he was not detaining unlawfully the property, introduced evidence to the effect that the lawful title was in him by virtue of a contract and since he was the holder of the title he was consequently not detaining unlawfully the property sued for and, therefore, was entitled to possession. It was

then necessary before the complaining party could prevail that evidence sufficient to convince the jury be introduced to show that the title was not in their adversary. This they did to the satisfaction of the jury as is shown by the verdict.

The general denial filed by the appellant made it necesssary for the appellees to prove the material allegations of their complaint. They did this by their evidence in the case in chief and then rested. The appellant then proceeded to introduce evidence to show that he did not unlawfully detain the property asserting that he had the title thereto and consequently the right to possession. This was an affirmative defense and it was certainly necessary, before the appellant could expect to have the jury believe it, that he establish it to their satisfaction by a fair preponderance of the evidence. This placed no extraordinary duty upon the one seeking it. He had asked the jury to ·decide it and certainly should be bound by the same rules applicable to all others who seek to establish facts affirmatively. Here any defense may be made under the general denial, however, because it may be so made does not change its affirmative character. When the plaintiff below rested which party would have prevailed if no more evidence was introduced? The plaintiff without a doubt. The defense under the law had any number of avenues open to it but it undertook to establish an affirmative one and it must accept all that goes with it. The necessity of establishing this affirmative defense to the satisfaction of the jury by a preponderance of evidence was one of these. While this instruction could have been more aptly worded the idea it conveyed was correct. *Cunningham* v. *Hoff et al.* (1888), 118 Ind. 263, 20 N. E. 756; *Waterbury et al.* v. *Miller* (1895), 13 Ind. App. 197, 209, 41 N. E. 383; *New Castle Bridge Co.* v. *Doty* (1906), 168 Ind. 259, 267, 79 N. E. 485.

Instruction numbered 6 given by the court is similar to the one above discussed as the appellant admits by citing the same propositions and authorities. What we have said in regard to the last above applies equally to this one.

Appellant also complains of instruction numbered 7 given by the court. What we have said earlier in the opinion relative to the recision or necessity for recision of the contract made with a person of unsound mind effectively disposed of this instruction. It might possibly be said that one sentence of this instruction wherein the court told the jury that this claim could have been properly presented as a claim against the estate was outside of the issues but even though such might be the case when combined with the rest of the instruction and with all the instructions given this statement was not prejudicial to the appellant here.

The appellant also contends that it was erroneous to reread the instructions to the jury. The mere rereading of these instructions was not reversible error.

The jury was properly instructed and the verdict was not contrary to law. Judgment affirmed.