TOMPKINS *v.* SMITH, EXECUTOR, ET AL.

[No. 18,227.   Filed June 17, 1952.]

504

*Claude D. Carson,* of Plymouth, and *Alban M. Smith,* of LaPorte, for appellant.

*Albert B. Chipman,* of Plymouth; *Oscar B. Smith, Jr.* and *Oscar B. Smith,* both of Knox, for appellees.

WILTROUT, J.—The appellee executor of the last will and testament of Margaret Tompkins, deceased, filed this action. Appellant's demurrer for insufficient facts was overruled. This ruling is challenged.

It is alleged that decedent executed her will many years ago, by the terms of which she gave all her property to her five children, share and share alike, including the appellant Maurice Tompkins. It is further alleged that, "said decedent Margaret Tompkins departed this life April 15, 1950, and that just shortly

before her passing and for approximately ten years she lived with her daughter Louise Cox at Knox, Indiana, and that during said period of years the decedent acquired certain securities among which were postal savings, United States Savings Bonds and stock in the Knox Building, Loan and Savings Association all of which were obtained by and exclusively owned by the decedent all of which securities were delivered by the decedent to her daughter Louise Cox for safe keeping." ". . . that during the years of 1948 and 1949 there was a general depreciation in the health of the decedent and at the opening of the year 1950 the decedent while living with her daughter Louise Cox reached eighty years of age, was very ill, and became weak and sick in mind and body and was of unsound mind whereupon Louise Cox and her husband early in March 1950 requested . . . . Maurice Tompkins, one of the legatees in decedent's will and son of the decedent to assist in the care of the decedent and take the decedent to his home for a short period and help care for her whereupon and about March 2, 1950, the defendant Maurice Tompkins demanded of Louise Cox that all the decedent's securities . . . . be delivered to him for the sole purpose of obtaining a lock box in the Hamlet State Bank, the defendant Maurice Tompkins then and there stating that all such securities would be placed in said lock box in said bank for safe keeping and that he would not take the decedent and assist in her care unless all such securities were first delivered him; . . . . said Louise Cox believed and relied upon the statements so made to her by said Tompkins and permitted him to take and he did take all such securities, and the decedent and removed the mother and securities from the home of said Louise Cox. . . . that upon March 2, 1950, the decedent was so ill in body and mind that

she would act upon any suggestion made to her by her children that her mind at that time was like that of a child and that the defendant Tompkins well knew said fact at said time and that the statements and promises . . . . with reference to placing said securities in a safety box for safe keeping were false and fraudulent and were made for the sole fraudulent purpose of obtaining said securities in order that defendant Tompkins might obtain the conversion of same for his own benefit and use, and to the exclusion of all others concerned."

It is further alleged that on March 20, 1950, a few days previous to the decedent's death, appellant Tompkins took decedent to a bank and induced her to sign authorities for the reissuance of United States Savings Bonds, to be reissued with appellant named as co-owner; that at that time, "the fact that decedent had previously executed her will was not explained to her and she was too ill in both mind and body to understand the import of said application for reissue . . . . that at said time decedent gave no instruction whatever as to what was to be done with said application for reissue of said bonds."; that after decedent's death appellant secured possession of the reissued bonds without knowledge of the executor, and upon demand refused to surrender them.

It is further alleged that decedent owned a certificate of stock in the Knox Building Loan and Savings Association; that in March 1950 appellant took decedent to the office of the association "for the avowed purpose of having said stock certificate assigned reading payable to the decedent or defendant Tompkins," but the certificate was never assigned; that the executor has demanded surrender of the certificate but Tompkins

refuses to surrender the same; that the association has been requested to correct its record and eliminate therefrom that part of its record disclosing that decedent and defendant Tompkins are the co-owners of said stock certification, but the association refuses to do so.

It is further alleged that decedent had a checking account which appellant claims.

It is further alleged that at the time of the taking of the securities defendant Tompkins well knew the decedent was in her last illness and that his subsequent conduct was for the express purpose of fraudulently having himself named as co-owner of the securities, and thus to perpetrate a fraud on all concerned including the estate of the decedent, and thus securing the defendant in a position to cash all such securities.

The complaint prays that the court declare all United States Savings Bonds and certificate of stock mentioned in the complaint the property of the estate; that Tompkins be ordered to assign and surrender such bonds and surrender all other securities of the decedent to the executor; that the defendant association be required to expunge from its records all reference to an assignment of decedent's stock or any reference to the defendant Tompkins being a co-owner thereof.

Trial by jury resulted in a verdict and judgment in favor of the appellee executor.

In support of his demurrer appellant argues that the complaint "alleges no facts of unconscionable acts, representations or concealment from which the epithets 'by fraud' and 'fraudulently' are reasonable legal conclusions and that such epithets alone are insufficient to charge fraud."

The complaint alleges that decedent was of unsound mind; that appellant, who was her son, took her from

her daughter's home and obtained possession of her securities in order that he might convert them to his own use; that knowing of his mother's mental infirmity he induced her to sign authorities for the reissue of bonds with himself named as co-owner. In our opinion sufficient facts are pleaded to avoid this argument of appellant. If the facts averred do not directly establish that appellant knew of his mother's unsoundness of mind at ·least they compel the inference of such knowledge to the exclusion of any other inference.

Appellant urges that the allegation as to decedent's unsoundness of mind is insufficient without further allegations more specifically setting forth the character of such unsoundness. If the allegation was deemed by appellant too general his remedy was by a motion to make more specific, not a demurrer. *Wayne Works* v. *Hicks Body Co.* (1944), 115 Ind. App. 10, 55 N. E. 2d 382; *Regester* v. *Lincoln Oil Refining Co.* (1933), 95 Ind. App. 425, 183 N. E. 693.

Appellant then argues that the complaint sets forth that the property in issue is in his possession and at least the bulk of it was formally transferred to him by the decedent, thus giving him title thereto; that no facts are alleged showing the acts of the decedent in giving appellant title and possession to be void; that it is not alleged that decedent was adjudicated to be of unsound mind and therefore her acts were voidable and not void; that the complaint fails to allege rescission or disaffirmance by the decedent or the executor prior to the commencement of the action.

Appellant relies heavily upon the case of *Ashmead* v. *Reynolds* (1891), 127 Ind. 441, 26 N. E. 80, wherein it is said:

"It is too well settled in this State to admit of controversy that the executed contracts and deeds of a person of unsound mind, not under guardianship, are not void but only voidable. Before an action can be maintained to set aside such contracts or deeds they must be disaffirmed. The same rule prevails as to contracts and deeds obtained by fraud.

"Before a party holding such contract or deed can be subjected to litigation, he must have an opportunity to correct the evil without costs. Something should be said, or some act done, whereby the party holding such deed or contract is distinctly given to understand that the party having the right to do so intends to disaffirm. It is the act of disaffirming which destroys a voidable contract or deed, and not the proceedings which may be taken to give force and effect to the disaffirmance after it has been made."

The Supreme Court stated in the later case of *Wells* v. *Wells* (1926), 197 Ind. 236, 150 N. E. 361:

"From a consideration of many cases it appears that the somewhat mysterious thing called a 'disaffirmance' is nothing more or less than a notice or a demand. In a quite recent case, it is held that the purpose of the demand is to give the grantee an opportunity 'to restore what he has received, without suit and costs, if he chooses.' *Barkley* v. *Barkley* (1914), 182 Ind. 322, L. R. A. 1915B 678. But why deal so gently with one who acquired property by fraud? Why manifest such tender regard for one who has procured a conveyance from an insane person, knowing the grantor's mental infirmity? The law does not require it."

The complaint in this case alleges that the appellant upon demand refused to surrender the bonds and the certificate of stock.

In *Warner* v. *Warner* (1937), 104 Ind. App. 252, 10 N. E. 2d 773, a case similar to the present case in

several respects, the appellant also contended that until persons have been judicially declared to be insane, contracts made with them are only voidable and not void. The Court said:

"Where an unconscionable advantage is taken of persons of unsound mind before they have been placed under guardianship or declared to be insane by one possessing knowledge of such condition the contract attempted to be entered into is absolutely invalid, void, and of no force or effect. In simple language, there is no contract. Since the appellant knew his father's condition he could not have acted in good faith. Those dealing with persons of unsound mind knowing them to be such can not exercise good faith. There is a rule that persons dealing with those of unsound mind in good faith and parting with valuable consideration are entitled to a disaffirmance and an offer to return to the status quo before a cancellation can be resorted to by the representative of the afflicted. But such is not the situation here . . . ."

There was no error in overruling the demurrer.

Appellant urges as error the refusal to give his instructions Nos. 1, 3, 4 and 5.

Instruction No. 1 attempted to summarize the issues formed by the pleadings. In so doing it states that this is an action to cancel and set aside transfers which it is admitted were made. This instruction was properly refused. Appellee Smith did not admit that transfers were made but his position was that the attempted transfers were void. Further, the subject-matter of this instruction was covered by an instruction given by the court.

Instructions Nos. 3, 4 and 5 would have told the jury that the issues of fraud and undue influence were withdrawn because there was no evidence introduced to sup-

port them and that the only remaining issue was whether the decedent was of sound or unsound mind when the alleged transfers were made. Much of the evidence was in sharp conflict. Evidence was introduced, however, from which the jury might properly have concluded that decedent was of unsound mind and that appellant knew this fact; that the securities in question had been kept in the home of the daughter where decedent lived until shortly before her death; that when appellant visited his mother he would always argue with her over what she did with her money "and would argue and swear and curse at her something terrible." The decedent had two hundred dollars in cash which she wore in a handkerchief affixed around her neck. Appellant took this from around her neck and said he was going to put it in a bank for the care of his mother. The deposit book shows the account to be in names of appellant, "Maurice Tompkins, Sr. or Margaret Tompkins," the decedent.

Further evidence was introduced that appellant said to decedent's daughter in whose home decedent lived that he would put the bonds in a lock box; that if his mother needed them "we would cash them," that he came after the bonds several times; that appellant took his mother to his home for a short time and on this occasion took the bonds; that he took his mother to a bank where she signed an application for reissue of the bonds; that he also went with her to the building, loan and savings association where entries were made showing appellant to be a co-owner of the certificate of stock.

Following his mother's death appellant made conflicting statements as to the purpose of the alleged transfer of the bonds. He said he was going to do

with them what his mother had told him to do—pay her funeral expenses and divide the remainder between the grandchildren. Again he said "I am going to do what my mother wanted. She wanted me to pay her bills and take care of what expenses she might have and what was left I was to keep, and I am going to do it. I might pay Joe and Louise a couple of hundred dollars for taking care of my mother but other than that, if there is anything left, I am going to keep it."

"It is well settled, as an abstract rule of law, that fraud, as a matter of fact, is never presumed; it must be clearly proved, either directly or circumstantially, by the party making the charge, . . . . It is quite true that fraud is a question of fact for the jury, and that it may be inferred from circumstances and need not be proved by direct or positive evidence." *Wallace* v. *Mattice* (1889), 118 Ind. 59, 20 N. E. 497. See also *J. M. Robinson., etc., Co.* v. *Stalcup* (1915), 58 Ind. App. 370, 106 N. E. 395. The evidence by which undue influence is established is usually circumstantial, and undue influence is essentially a question of fact. Direct evidence is necessary only to establish the facts from which undue influence may properly be inferred. *Workman* v. *Workman* (1943), 113 Ind. App. 245, 46 N. E. 2d 718.

As stated in *Warner* v. *Warner, supra,* "Those dealing with persons of unsound mind knowing them to be such cannot exercise good faith."

In *Barkley* v. *Barkley* (1914), 182 Ind. 322, 106 N. E. 609, the Supreme Court stated:

"It is settled that where the mental incompetency of the one who has made the conveyance or other contract is known to the other at the time it was made no allegation of a tender or offer to

restore the consideration is a necessary averment of the complaint. (Citing authorities.) Such knowledge destroys good faith and when coupled with want of or gross inadequacy of consideration establishes fraud."

We conclude from an examination of all of the evidence that the evidence was sufficient to raise a question of fact for the jury and there was no error in refusing to give appellant's Instructions Nos. 3, 4 and 5.

Appellant also challenges the giving of a number of appellee Smith's instructions.

The giving of Instruction No. 2 is claimed to be erroneous because not within the issues or evidence, and Instruction No. 6 on the ground that it was not within the issues. The instructions concerned the law of gifts. The appellant introduced evidence which, if believed, would have shown a gift to him, and submitted an instruction on the law of gifts which was given by the court. It was not error to give appellee's instructions on this subject. Had it been error it was invited error, of which appellant may not complain. *McCague* v. *N. Y. C. & St. L. R. Co.* (1947), 225 Ind. 83, 71 N. E. 2d 569, 73 N. E. 2d 48; *Coca Cola Bot. Wks.* v. *Williams* (1942), 111 Ind. App. 502, 37 N. E. 2d 702.

By Instruction No. 7 the jury was told that if decedent was in fact lacking in mental capacity to execute a valid gift, it is immaterial what caused the condition and appellee had no burden to show the cause of such condition. The objection was that it was not within the issues and had a tendency to confuse the jury. The mental condition of decedent was clearly within the issues. Appellant himself ten-

dered eight instructions on the subject which were given by the court. The instruction is not confusing.

Instruction No. 9 was objected to on the ground that it tenders the issue of fraud, concerning which there is no evidence. We have stated heretofore in this opinion that there was such evidence.

That part of the objection made to Instruction No. 10 which is urged by appellant in his brief is that the issue of fraud is not supported by any evidence; that the part of the instruction concerning the effect of a lack of delivery of a gift is not within the issues. These objections are without merit, as is explained in discussing Instructions Nos. 2, 6 and 9.

The objections urged in appellant's brief to Instruction No. 13 are not those made in the trial court.

No error is available except upon the specific objections made. Rule 1-7.

Appellant also argues that Instructions Nos. 3, 6, 11, 12 and 13 "invade the province of the jury in that they use the words 'attempted transfers, gifts,' 'purported transfers.'" No such objection was made to Instructions Nos. 3, 6 and 13, nor is alleged error in giving Instruction No. 3 made a ground of the motion for new trial. Such words are not used in Instruction No. 11. As used in Instruction No. 12 the words "attempted transfer" do not tell the jury, as appellant argues, that the attempt to transfer failed. The province of the jury was not invaded. Further arguments in respect to Instruction No. 11 are not based upon any specific objection made in the trial court and are therefore not available. Rule 1-7.

Instructions Nos. 9 and 10 are also urged to be erroneous because not sufficiently specific. If appellant desired

more full and specific instructions he should have tendered them. *Hamling* v. *Hildebrandt* (1949), 119 Ind. App. 22, 81 N. E. 2d 603; *Allman* v. *Malsbury* (1946), 224 Ind. 177, 65 N. E. 2d 106.

The sole objection to Instruction No. 14 is that it would only tend to confuse the jury. We find nothing confusing about the instruction. If anything, it was more favorable to appellant than it should have been. Furthermore, "By stating that the instruction was confusing and misleading the appellants did not make a specific objection and no question is raised." *Allman* v. *Malsbury, supra.*

The remaining grounds of appellant's motion for new trial involve alleged error in the admission of evidence. Such alleged errors must be set forth with particularity in the motion for new trial. The motion must set out the question and answer, or the substance thereof, the objections urged below, and the ruling of the court thereon, or no question is presented on appeal. *Rosenmeier* v. *Krauss* (1948), 118 Ind. App. 57, 75 N. E. 2d 798; *Bulen* v. *Pendleton Banking Co.* (1948), 118 Ind. App. 217, 78 N. E. 2d 449; *David* v. *David* (1946), 116 Ind. App. 603, 66 N. E. 2d 284. None of the answers are shown in the motion. Even if we were to assume that the alleged errors were properly presented, the admission of such evidence was not harmful error.

A doctor was asked a hypothetical question based upon facts concerning which evidence had not yet been introduced. The witness was allowed to answer upon the promise that such evidence would be introduced later. Ruling on the objection was withheld. If appellant ever made a motion to strike out the answer upon the ground that appellee failed

to prove his hypothesis we are not advised of that fact. Such alleged error is therefore not available to appellant. *Partlow* v. *Mitchell* (1919), 69 Ind. App. 505, 122 N. E. 340; *Heady et al.* v. *Brown et al.* (1898), 151 Ind. 75, 49 N. E. 805, 51 N. E. 85. We also find that evidence was introduced to support all the hypotheses and there was no harmful error. *Mounsey, Admx.* v. *Bower* (1922), 78 Ind. App. 647, 136 N. E. 41.

The transcript reveals that in answer to one of the questions the witness stated "I don't know exactly how to answer it," and to another, "I don't know." These answers were not harmful to appellant. There was no specific objection made to another question, counsel for appellant merely stating, "Just a minute." On appeal the appellant is confined to the specific objection made. The court will not consider any objection not made in the trial court. *Allman* v. *Malsbury, supra; Craig, Exrx.* v. *Citizens Trust Company* (1940), 217 Ind. 434, 26 N. E. 2d 1006. Objection was made to another question on the ground that it was a hypothetical question put to one who was not an expert. The answer to the question was not based upon any assumed hypothesis.

We conclude that the verdict was sustained by sufficient evidence and was not contrary to law.

We find no prejudicial error. Judgment affirmed.

NOTE.—Reported in 106 N. E. 2d 487.