In re Estate of Hutchinson et al. *v.* Lehr.

[No. 19,759. Filed June 13, 1963. Rehearing denied August 14, 1963. Transfer denied September 24, 1963.]

*William T. Means, Bingham, Loughlin & Means,* of Mishawaka, *David Peters* and *Peters & Peebles,* of Fort Wayne, for appellant.

*Robert L. Miller,* of South Bend and *Robert B. Hartzog,* of Goshen, for appellee.

KELLEY, J.—Appellee filed claim for services rendered against the appellant administrator W/W/A of the named appellant estate. The claim was duly disallowed and trial thereof was to the court, without intervention of a jury. Finding for appellee in sum of $23,000.00 and consistent judgment was rendered. The sole error here assigned is the overruling of appellant's motion for a new trial on the specified grounds that the amount of recovery is too large, that the decision of the court is not sustained by sufficient evidence and is contrary to law, and that the court erred in overruling appellant's objection to certain hypothetical questions put to witnesses called by appellee and in admitting into evidence the answers thereto.

Appellant has grouped and supported by one argument said specifications of the new trial motion that the decision is not sustained by sufficient evidence and that the same is contrary to law. These specifications are predicated wholly upon the proposal that the court erred in "applying the law to the facts presented in evidence." This proposal, in turn, finds its roots in appellant's contention that, as appellant says, "in reviewing the record as a whole, there is every reasonable inference to support the belief that the relationship between the decedent and the claimant was one of convenience and without the benefit of clergy."

The difficulty we experience with appellant's said contention is that we are not referred by appellant's brief to the evidence which establishes that the relationship of appellee and the decedent was "one of convenience and without benefit of clergy." There is no contention by either party that appellee was a member of decedent's family. But appellant takes the position that appellee and decedent lived "in a family relationship" and that where "one . . . lives with a family" or "where there is an illegal or illicit relationship between the parties" a recovery cannot be had because "a promise will not be implied on the part of either to pay for services rendered."

It is apparent, of course, that the logical validity of the said various deductions advanced by appellant must rest upon a pertinent premise uncontrovertably established by uncontradicted evidence of probative value warranting only one inference leading inescapably to the stated premise. To meet this requirement appellant tenders us only its own statements and conclusions as to what it deems the evidence to be and to establish, and the legal effect thereof, all without any citation or reference to any part of the record or brief where

the same may be found. As illustrative, appellant states (without citation to the record): that appellee performed various household duties, errands, and nursing duties for decedent for 19 years; that at the time she began she was 44 years of age and decedent was 64 years of age; that "there was testimony" with reference to accountings between decedent and appellee; that decedent paid appellee $300 immediately prior to his demise; that appellee "testified" with reference to grocery purchases from time to time for decedent; that appellee's "Exhibit 10" "indicates" that in one week she purchased six quarts of milk, three loaves of bread, 36 eggs and 132 oranges.

Appellant continues: "no person would render services . . . over a period of 19 years without being compensated unless there was no expectation of payment"; "such duties were rendered in exchange for his love, affection and understanding and the stipends given to her from time to time"; "there was evidence that the decedent was the putative father of the son" of appellee; that "there is more than a mere inference to be obtained from reading the record as a whole that decedent was indeed the father"; that appellee said she kept accounts of items purchased for decedent "but the only thing introduced . . . in her behalf is a quite dubious list" of items "in her own handwriting"; that "one must bear in mind that at the time of the purchase" of said items appellee's "unemployed son, his wife and children were living with" the appellee; "This is the same son who on one occasion indicated that the decedent doctor was his father"; that the appellee "never made any demand upon decedent for compensation, and kept no books of sums allegedly due her."

The foregoing, given in appellant's brief without any reference to the record or where it may be found and

without any statement or showing that the evidence was without conflict, comprises the whole and all that appellant submits in its brief concerning the relationship which appellant asserts existed between decedent and appellee as "convenient and without benefit of clergy." It should suffice to say, without more, that such assumptions and conclusions would not authorize us to hold, as against the finding of the trial court, that appellee lived in an illicit or immoral relationship with decedent and that, consequently, the court erroneously applied the law "to the facts presented in evidence."

Appellant further says that "As shown by the facts already stated (being the same statements and factual conclusions we have already referred to) . . . and other facts shown in the record, it is obvious that" appellee "did not expect to be compensated for the services she says she rendered, but only conceived the idea of filing a claim subsequent to the demise of decedent." The facts "already stated" by appellant are wholly insufficient to lead to appellant's expressed conclusion that appellee "did not expect to be compensated" for her services. Appellant's stated conclusion as to what it deems the evidence to establish is apparently not the same conclusion arrived at by the court upon the evidence. Appellant does not contend or assert that the evidence was without dispute or that the permissible reasonable inferences afforded by the evidence were non-conflicting and lead to the one sole conclusion stated by appellant. We are not apprised by appellant of what "other facts shown in the record" we are to search for as sustaining appellant's aforestated conclusion.

To the end that any asserted injustice may not prevail, we have carefully read and considered the evidence as reported in appellant's condensed recital thereof, to-

gether with the additional evidence pointed out by appellee. There appears ample evidence to sustain the finding by the trial court that there was, on the one hand, an intention by decedent to pay and, on the other hand, that there was an expectation by appellee to receive compensation for her service. The extent of the services performed by appellee, and the value thereof, were questions for the trial court, as was, also, the question of whether the services were rendered gratuitously or under circumstances which would preclude recovery by appellee. *Richmire, Administrator* v. *Deardurff* (1927), 86 Ind. App. 31, 33, 155 N. E. 720, p. 721.

It appears, and seems not to be denied, that appellee performed some of the services for which she seeks compensation. There is evidence that decedent said of appellee:

"What a wonderful person, I don't know what I would do without her.";

that he did not know how he could get along without her services as his income was small and he was going to give her his property and would leave her his entire estate after his death; that decedent told appellee:

"Don't worry, all the trouble I cause you you will be well taken care of when I die";

that decedent told a nurse, who was a witness, that he was fixing up the place so appellee wouldn't have much to do later and that *he was not paying her because she was to have the home;* that appellee had earned the place and more and he didn't have money to pay her so that it was no more than right that she should receive the property as he had figured up what a nurse would cost him for the years and he couldn't pay appellee that kind of money. Other testimony was to the effect that

decedent, time and time again, said that he didn't know what he would do without appellee to help him and do for him; that he had been bad (sick) for so long that appellee was his right hand bower; that

"I am not paying her wages, and I expect her to have the place for her home."

The record discloses that appellee performed for decedent various household and housekeeping duties, errands, cleaning, shoveling coal, hauling ashes, washing windows, sweeping the walks, mowing the grass, getting the groceries, paying utility bills, and rendering practical nursing services and care for the decedent during the approximate 19 years prior to his death in 1960, at the approximate age of 73. The general physical condition of decedent seemed fairly good until about 1949. In 1947, he became afflicted with arthritis with the consequent swelling of his leg and ankles and the impaired use of his hands. Appellee rendered personal services to decedent in connection with his arthritic disability, including the preparation of and assistance to him in the required soaking of his feet in tempered water. About 1949 the physical condition of decedent gradually grew worse, in 1950 he suffered a broken arm, and in 1957 he was removed to a hospital from which he was shortly released. In 1959 decedent became completely bedridden and appellee went daily to his home, except on Saturdays and Sundays when she was there between 11:00 A.M. to 6:00 P.M., and performed general nursing and housekeeping duties. From November, 1959 to the time of decedent's death, appellee was in practically daily attendance for approximately 24 hours a day.

In the light of the foregoing facts established by the evidence, and other facts to which it seems unnecessary

to refer, it is somewhat difficult to appreciate appellant's position that appellee "did not expect to be compensated" for her services. In the *First Bank & Trust Company, etc., Executor, etc.* v. *Tellson* (1954), 124 Ind. App. 478, on page 487, 118 N. E. 2d 496, it is said:

" . . . Our courts have held on numerous occasions that, although the elements of intention to pay on the one hand and expectation of compensation on the other must be found to exist, *such elements, like other ultimate facts, may be inferred from the relation and situation of the parties, the nature and character of the services rendered, and any other facts and circumstances which may reasonably be said to throw light upon the question.* . . .

" . . . .

"Also, in the case of *Weir* v. *Lake, supra,* [Weir v. Lake (1942), 112 Ind. App. 318, 326, 41 N. E. 2d 828], the court stated:

" 'We know of no reason why the declarations of a deceased person, especially when they are corroborated by conditions and circumstances, are not sufficient to establish the existence, terms, and conditions of an express oral contract . . . ' " (Emphasis and bracketed words supplied). See, also, on the point, *Richmire, Administrator* v. *Deardurff, supra,* and *Johnson* v. *Estate of Gaugh et al.* (1955), 125 Ind. App. 510, on pages 517 and 518, 124 N. E. 2d 704.

Upon this record and the established law we are irresistibly impelled to the conclusion that there was sufficient evidence to sustain the decision of the trial court and that the same was not contrary to law.

Appellant urges error in the assessment of recovery, in this, that the amount is too large. Appellant advances no logical or cogent reason or argument under the rules in support of this specification and no point of law, with application to the facts,

is presented nor is any legal authority cited, as required by Supreme Court Rule 2-17(e). The only argument presented is that the "judgment" of the trial court was "simply the result of conjecture" by the trial court; that there is no reasonable basis or inference that may be derived from the evidence to warrant such a finding; that the testimony was "loose, contradictory and without any support"; that one needs only to examine the photographs to determine that appellee was in fact no housekeeper at all; that it is not "beyond the realm of possibility" that if the decedent's dwelling had been inspected by the department of health, an order would have been issued to clean up the premises; that some of newspapers used to line the drawers of decedent's home might well be classified as collector's items; that of the shirts introduced in evidence, virtually all were brand new or had laundry marks; and that if appellee falsified this "aspect" of her case, it is reasonable to presume she committed the same offense with reference to other "facets" of the case. The foregoing is the complete argument submitted by appellant in support of its said specification of error. It is evident, without further discussion, that appellant has failed to demonstrate any error of the trial court in the assessment of the recovery.

The final specification of error urged by appellant is that the court erred in overruling the objections made by appellant to hypothetical questions put by appellee on direct examination of her witnesses, Samuel I. Brooks, Mildred L. Lane, Esther Huffman, and Crystal Schutter, and in admitting into evidence their answers to such hypothetical questions.

Summarized, each of the complained of hypothetical questions sought the opinion of the witness as to what the services performed by appellee were reasonably

worth per hour or per week, depending upon the assumed facts of the particular question. The services involved in this case are numerous and varied and the hypothetical questions to the witnesses, Samuel I. Brooks and Mildred L. Lane, were rather long because of the many assumed facts contained therein. The questions to Esther Huffman and Crystal Schutter pertained only to the assumed laundry work done by appellee.

We consider the hypothetical questions and the objections made thereto as they appear in appellant's motion for new trial. The objection made by appellant to the question put to the witness Crystal Schutter was that it be "the same objection made to the testimony of witness Ethel Brumbaugh on May 17, 1961 in this cause." However, the referred to objection is not set out and we find no hypothetical question, objection and answer in the examination of Ethel Brumbaugh, either in the motion for a new trial or in appellant's condensed recital of the evidence. Therefore, on this appeal, no error can be asserted as to the hypothetical question put to said Crystal Schutter. Since the same hypothetical question was put to the witness Esther Huffman as the one put to said Crystal Schutter, and their respective opinions as to what appellee's laundry services were reasonably worth were relatively the same, the evidence as to such value was properly before the court from the witness Crystal Schutter and no harm has or could result to appellant by any error of the court in overruling appellant's objection to the hypothetical question put to said witness Esther Huffman.

The objections made by appellant to the hypothetical questions put to the witnesses, Samuel I. Brooks and Mildred L. Lake, were identical and will be jointly considered. The objections, as shown by the motion for new trial, were:

1. "the facts assumed are clearly so exaggerated as to impair the opinion of the witness."
2. "the assumptions are misleading, confusing, and outside of the evidence or fair inference from the evidence."
3. "the hypothetical question is not in proper form."
4. "the witness is being asked to give his opinion on one of the exact issues facing the court . . . and is, therefore, invading the province of this court in finding a particular fact."
5. "the witness has not been properly qualified to give an opinion on the subject matter covered . . . ."
6. "the question assumes a multitude of facts which have no proper bearing upon a per-hour basis."

Appellant does not present any argument as to said objections numbered 3, 4 and 5, and, therefore, under Supreme Court Rule 2-17(f), are deemed waived.

As to said objection numbered 1, appellant simply says: "some of the matter contained in the question was so highly exaggerated that it could not even be inferred from the evidence presented." We are not informed by appellant as to what was the "highly exaggerated" matter that was contained in the question. Without such information we are not in position to pass on the validity of the stated objection. As to said objection numbered 2, appellant says only: "if facts are assumed in a hypothetical question which . . . are such manifest assumptions as to be misleading, confusing and outside the evidence, or fair inferences from the evidence, it should be excluded, and their admission might be prejudicial error in a given case." Again, appellant does not apprise us of what assumptions in the hypothetical question are claimed to be "misleading, confusing and outside the evidence." We have no way of knowing which assumptions appellant may have ref-

erence to and, consequently, we can make no logical determination on the stated objection.

With reference to said objection numbered 6, appellant proposes that "the question was asked, and the answers given, over objection, before evidence of the elements of the question were in." Appellant further says that the court overruled the objection "rather than withholding its ruling to see whether the elements of the question would be proved without an offer by claimant to prove them later." Appellant cites cases and text to the effect that it is error for the trial court to admit hypothetical questions containing facts "of which there is at the time no evidence." We find no request or motion by appellant that the court withhold its ruling on the objection until the "elements" were proved nor does appellant assert the making of any such motion or request to the court.

It does not appear in the motion for a new trial or in any part of appellant's brief that the latter ever indicated to the trial court or otherwise apprised it of the particular "elements" of facts assumed in the hypothetical question which were not supported by the evidence. Apparently, insofar as we are advised by the record and the briefs, the particular elements or facts contained in the hypothetical question which are claimed by appellant not to be supported by the evidence, are pointed out and stated for the first time in appellant's brief on this appeal. Such facts or elements which found no basis in the evidence should have been properly called to the attention of the trial court. The trial court should have been given an opportunity by appellant to consider and rule upon the error claimed by the latter. Appellant's proposal now comes too late. Further, it does not appear that appellant at any time after the conclusion of appellee's evi-

dence moved to strike out the answers to the hypothetical questions upon the ground of appellee's failure of proof of material facts or elements therein contained. Therefore, the alleged error is not available to appellant. *Tompkins* v. *Smith, Executor et al.* (1952), 122 Ind. App. 502, 517, 518, point 16, 106 N. E. 2d 487; *Partlow* v. *Mitchell* (1919), 69 Ind. App. 505, 122 N. E. 340; *Heady et al.* v. *Brown et al.* (1898), 151 Ind. 75, 77, 78, 49 N. E. 805.

We have carefully considered each substantial error urged by appellant, and find no reversible error to be established by appellant by the record.

Judgment affirmed.

Mote, C. J., Hunter and Pfaff, JJ., concur.

NOTE.—Reported in 191 N. E. 2d 46.