White *et al. v.* The Butler University.

---

No. 8660.

## White et al. *v.* The Butler University.

Corporation.—*Butler University.—Subscription.—Bond.—Stockholder.—Pleading.*—W. subscribed for ten shares of the stock of The Butler University. Instead of paying his subscription he gave a bond with surety as a borrower. In an action upon the bond, W. answered, 1. That by the articles of association and by-laws of.the University each stockholder is entitled to a *pro rata* share of all profits, interest and accumulations accruing to it, and to have the same applied to satisfy any indebtedness to it from him; that large donations had been made to it, and interest and profits collected, so that W.'s share thereof exceeds the sum due upon the bond. 2. That the subscription was made upon the representation by the plaintiff's agent, that the subscriber would thereby acquire two perpetual scholarships which would readily sell for enough to pay interest on the amount subscribed, relying on which the defendant subscribed; that since that time the plaintiff has so changed its rules as to make admission and tuition free, thereby rendering the defendant's scholarships and stock of no value.

*Held,* that the charter of the University is a public act, and it prohibits the distribution of its funds amongst stockholders and requires them to be used for the purposes of the institution, wherefore the first answer was bad.

*Held,* also, that because the second answer fails to allege that the representations made were false, and because, by its public charter, the institution had power to make its tuition free, the second answer was bad.

From the Bartholomew Circuit Court.

*R. Hill* and *J. W. Nichol,* for appellants.

*J. M. Judah* and *A. S. Caldwell,* for appellee.

ELLIOTT, C. J.—The appellee was incorporated in January, 1850, under the name of The North-Western Christian University, and this remained the corporate name until 1877, when it was changed to The Butler University.   In 1865 the appellant subscribed for two shares of the capital stock of the corporation, but instead of paying his subscription he retained it as a loan from the University.   To secure this loan he and the appellant Quick, his surety, executed the bond upon which this action is founded.

The first paragraph of the answer alleges that White is the principal and Quick the surety in said bond; that it was given in consideration of a subscription by White to the capital stock of the appellee; "that by the articles of association and by-laws, rules, and regulations of said corporation, each stockholder is entitled to his *pro rata* share of all profits, interest and accumulations arising from any source to and in favor of said corporation, and to have the same applied toward the satisfaction of any indebtedness" from any stockholder; that since the organization of the corporation it has received large donations from various sources, and has loaned large sums of money and received interest thereon, and the dividends and profits arising and accruing to White, as a stockholder, are largely in excess of the amount due upon the bond in suit.

We regard this answer as bad.   It is bad for the reason, among others, that the corporation has no power to earn

profits for division among its stockholders. The act incorporating the University is a public one, and it is therein declared that the objects and purpose of the corporation shall be to establish and sustain an institution of learning. It is further provided that the Board of Directors are empowered to expend not over one-third of the capital stock in ground and buildings for the college, but "*the balance of the said capital stock not so expended and applied shall be kept and retained as a permanent fund* for the endowment of the institution, and may be loaned out, * * * *interest to be used and applied to maintain, sustain and support such institution.*"

The provision of the charter which we have quoted forbids the distribution of profits among the shareholders, for such a distribution would be in direct violation of the clause that the balance of the capital stock not expended for college grounds and buildings shall be kept as a permanent endowment fund. If there were any doubts at all as to the power of the corporation under the provisions of the charter referred to, that doubt would be resolved against the appellants by section 15, which reads as follows:

"Sec. 15. From and after the opening of the institution, each stockholder whose stock is fully paid or secured, as herein contemplated, shall receive interest at the rate of six per cent. per annum on the amount of his or her stock, payable however, solely and exclusively in tuition in said institution, *at the usual rates for tuition therein,* when demanded, and payable to such stockholder, his or her order or assigns, at any time within ten years after such interest shall accrue."

It is very evident from these statutory provisions that the corporate officers had no power to make any by-law providing for a distribution of the revenues of the corporation among the shareholders. The object of the charter was to create an institution of learning and to enable it to secure and accumulate an endowment fund for the purpose of promoting the object for which the corporation was invested with corporate rights and powers.

If it were granted that the corporation had power to declare and distribute dividends to its stockholders, the answer would still be bad. There is no averment that a dividend had been declared. A stockholder has no claim to a dividend until it has been declared. Mr. Field says: "A shareholder has no legal right to the profits of his shares until a division is made, and a contract by him in reference to dividends and profits upon his stock includes only dividends or profits ascertained and declared by the company and allotted to him, and not profits to be ascertained by third persons or courts of justice, upon investigations of the accounts and transactions of the company." Field Corp., section 103.

The second paragraph of the answer alleges that the agent of the appellee offered two shares of stock for sale to the appellant White; that the agent represented that if he would subscribe for the shares of stock he would become entitled to a perpetual scholarship in the University; that it would authorize him to send to such institution any person whom he chose; that such scholarship was transferable, and was then worth, and could be easily sold for, $10 per year; that by this means he could realize enough to pay the interest on the amount of his subscription; that the appellee's agent then agreed with appellant that if he would agree to subscribe for the stock the appellee would not require the payment of the subscription, but would accept appellant's bond therefor; that the appellant, relying upon these representations and promises, and solely in consideration thereof, executed the bond sued on; that afterward, "the competent authorities of the University, by proper action," so changed the rules and regulations in regard to admission and tuition, as to make the tuition free to any and all persons, and thus deprived appellant of the benefit of his scholarship and rendered his stock valueless.

It is plain that this answer can not be upheld upon the ground that it states facts constituting fraud. The statements as to the value of the stock were mere expressions of opinion. Representations of value are not ordinarily deemed represen-

tations of material facts. There is nothing to take this case out of the general rule. Commendations of the value or quality of a thing are not regarded as fraudulent representations. "*Simplex commendatio non obligat.*" *Neidefer* v. *Chastain,* 71 Ind. 363. If it were to be held that the representations concerning the value of the scholarship were binding and material, still the answer, if treated as stating a defence of fraud, would be insufficient, for the reason that it is not averred that this representation was untrue. No answer pleading the defence of fraud can be good without averring that the representations stated as the ground of defence are false.

The answer does not show a failure of consideration. Appellant contracted for and received two shares of stock, which entitled him to a scholarship in the university. It was for this that he contracted. There was no fraud. As appellant got what he contracted for, and was not deceived by any fraudulent representation, he can not defend against his bond. The rule, that where one gets the thing for which he knowingly bargains he can not complain, is a rudimental one, and fully applies to this case.

The answer does not aver that White did not get the thing he bargained for, but that it is of less value than he believed it to be. The stock and scholarship he obtained in accordance with the terms of his contract, and, therefore, received the full consideration which he demanded. In such a case there is no failure of consideration. The case of *Coil* v. *The Pittsburg Female College,* 40 Pa. St. 439, closely resembles the present. In the opinion there delivered it was said, in speaking of a plea very similar to that under consideration: "This is called a failure of consideration, but improperly. It is not averred that the defendant does not get the scholarship, in payment for which he gave his notes. It is not alleged that he does not obtain all that it was contemplated he should have when the contract was made. That the scholarship turns out not to be worth as much as he expected may be a misfortune, but it is not a failure of consideration."

The appellant White was a corporator when the change was made in the rate of tuition. Those who made it were his representatives. His answer avers that the change was made by the competent "authorities of the University and by proper action," and it is therefore to be treated as an expression of the will of a majority of the corporators. At the time he made his subscription, he was bound to know the powers, rights and duties of the corporation of which he became a member, for these were defined by a public law. He was bound to know that the corporation had authority to make such changes respecting tuition as would promote the object for which the corporation was created. He must have known that the majority of the corporators possessed full control of all corporate affairs, with the authority to make all needful changes in the by-laws of the corporation. He had no right to expect that these by-laws should be like the laws of the Medes and Persians. As the corporation, in making the change, exercised a legal right in a legal manner, it can not be deemed to have injured any person, much less a corporator. It would be a complete subversion of fundamental principles to hold one subject to liability who had done what he might rightfully do, and in the manner which the law authorizes. By altering the by-law respecting tuition the corporation did not release stockholders or borrowers from their liability.

The answers were bad and the court did right in sustaining the demurrer of the appellee.

Judgment affirmed.

———— ◆ ————

PARTNERSHIP.—*Real Estate.*—*Conveyance.*—*Sheriff's Sale.*—*Tenants in Common.*—*Notice.*—A conveyance to two, by deed in the usual form, vests in