## FINEBERG v. CLARK ET AL.

[No. 20,072. Filed August 11, 1965. Rehearing denied September 27, 1965.]

*Norman Newman,* and *Dann, Backer & Pecar,* of Indianapolis, for appellant.

*Lawrence H. Hinds,* of Indianapolis, for appellee, William Clark.

HUNTER, J.—This is an appeal from an action in replevin wherein appellant Fineberg sought to recover possession and immediate delivery of some Two Hundred Thousand (200,000) used brick from appellees Clark and Tiller; appellant also sought damages for the alleged wrongful detention thereof. Appellee Clark filed an answer and Tiller failed to appear and was defaulted. The cause was tried before the trial court. At the conclusion of appellant's evidence, appellee moved the court for a finding with the appellant joining in such motion on his behalf. The court found on appellee's motion and against appellant entering judgment in favor of appellee decreeing that the latter was entitled to the sum of Two Thousand ($2,000) Dollars as damages for Fineberg's wrongful taking and withholding of Clark's property.

We will consider the separate issues that have been raised by appellant's assignment of error, which is that the trial court erred in overruling appellant's motion for a new trial.

Fineberg, a builder, desired to purchase some used brick for his construction work. Clark, a wrecker, wished to sell the walls of brick from a certain complex of buildings which he was tearing down. As a result of their mutual desires, these parties entered into a contract of purchase. This contract, which is at

the root of this litigation was prepared by Fineberg; it is as follows:

"August 8, 1962

"This contract is entered into August 8, 1962, between William Clark and Milton J. Fineberg.

"It is now agreed between the parties hereto, that *William Clark is now in the process of wrecking certain buildings located at 1801 English Ave. and securing therefrom, a quantity of used brick.* It is now agreed as follows:

"1.) William Clark will load delivery trucks provided by Milton J. Fineberg, (with) *One Million seventy thousand (1,000,070,000) (sic) used brick, more or less, from the buildings to be wrecked.*

"2.) William Clark will cause no delay in loading of the trucks, and the scheduling of the trucks will be made between William Clark and Marshall Dishon, (or) a representative of Milton J. Fineberg.

"3.) *That the total cost to be paid for this used brick shall be $8,000.00.* This amount shall be payable in four installments. "The first installment shall be $2,000.00, upon execution of this contract, and the receipt of which is hereby acknowledged. "The second installment shall be an additional $2,000.00, provided one-half of the total number of brick shall have been delivered within 10 days of the date of this contract.

"The third installment shall be payable 10 days after the second installment. "The fourth installment shall be payable upon completion of the total brick being delivered.

"*It is understood the brick to be delivered will come from (a) the interior walls of the main building and the inside foundation of the main building; (b) and the complete building, both interior and exterior of the power plant; (c) and the 4' foundation wall of an additional steel building.*

"It is agreed that William Clark is fully covered against any loss, or injury or damage to property incurred while in the process of loading the trucks

and will save Milton J. Fineberg, harmless to any claim.

"Witness: /s/ (L. Marshall Dishon

 /s/ *(William Clark)*

 William Clark

 .R.R. #1, Box No. 660
Mann Road,
Indianapolis, Indiana
Tele UL 6-4777

"Witness: /s/ (George Tilly)

 /s/ *(Milton J. Fineberg)*

 Milton J. Fineberg

 6465 East 56th Street
Indianapolis, Indiana

"Dated: August 8, 1962"

Fineberg, in his suit in replevin and affidavit for immediate possession, alleged that he was entitled to "200,000 (more or less) used, red, clay, rectangular brick". He based this right of ownership and possession on the alleged fact that he had received only approximately 193,000 "good, whole brick", and he had paid for approximately 535,000 of such brick in that he had tendered one-half of the total purchase price ($4,000) as enumerated in the contract. By various witnesses and documentary proof, appellant offered evidence on the allegations in his complaint which evidence attempted to sustain his theory of ownership of the property and Clark's wrongful detention thereof. Appellant thus urges that he presented a *prima facie* case unrebutted by appellee and that the trial court was bound to find for him when both parties moved for a finding at the close of appellant's evidence. In partial support of his argument, he cites *Young, et al.* v. *Miller et al.* (1896), 145 Ind. 652, 656, 44 N. E. 757, wherein the Supreme Court states that:

"A prima facie case, made by the plaintiff, must

always stand unless its force is broken by the defendant's evidence; (.)"

Appellant, in his brief, then concludes that:

"If the plaintiff presents a *prima facie* case and it stands unrebutted, or "unbroken," as the cases say, by any evidence in rebuttal or contradiction from the defendant, the court, as a matter of law, is bound to find for the plaintiff." (Appellant's brief, p. 61)

We must state that appellant's conclusion is erroneous. A "prima facie case" has been defined as

"A case which has proceeded upon sufficient proof to that stage where it will support (a) finding *if evidence to (the) contrary is disregarded"*. Black's Law Dictionary (our emphasis)

There is no rule of law to the effect that the "evidence to the contrary" to the prima facie case, must proceed from the defendant's evidence, forcing a trial court to find only for a plaintiff once such plaintiff has presented proof on each material allegation. Appellant, in setting out the above statement from *Young et al.* v. *Miller et al., supra,* in his brief, failed to quote the complete statement as found on pp. 656-657. In further explaining the effect of a prima facie case made by the plaintiff, the Supreme Court said:

" . . . but the defendant is never required, under the general denial, to negative the truth of the plaintiff's prima facie case by a preponderance of the evidence. If, upon the whole evidence, the plaintiff does not have a preponderance, the defendant must recover. If the scales are equally balanced the plaintiff must fail. It is perfectly clear, therefore, that to break the force of a prima facie case it is not necessary that the contrary shall be established by a preponderance of the evidence, but that it is sufficient if, from the evidence

pro and con, the plaintiff cannot be said to have a preponderance upon his side of the issue."

In the instant case, both defendant-appellee and plaintiff-appellant moved for a finding at the close of plaintiff's evidence. When there are joint motions for a verdict: "The rule that only the evidence most favorable to the adverse party will be considered can have no application." *Wilson, Admx.* v. *Rollings* (1937), 214 Ind. 155, 157, 14 N. E. 2d 905. See also *State Security Life Ins. Co.* v. *Kintner* (1962), 243 Ind. 331, 334, 185 N. E. 2d 527 and *Combs Broderick, d/b/a* v. *Keller et al.* (1957), 127 Ind. App. 531, 536, 142 N. E. 2d 474. Therefore, when both parties in a case before a trial court request the trial court to make a finding in their favors upon completion of plaintiff's evidence, the trial court may properly weigh the evidence as it was presented by the plaintiff and decide the case thereon, if the judge deems that he can then fully decide the issues. This procedure would of course be subject to the defendant's right to present his evidence. *Smith, etc.* v. *Markun, et al.* (1954), 124 Ind. App. 535, 119 N. E. 2d 899. The judge herein therefore acted correctly in deciding the case at the close of plaintiff's evidence and he was not bound to find for the plaintiff.

Appellant, somewhat extensively, attempts to show how his evidence proved that he should prevail on his complaint in replevin. In finding against appellant on his complaint, the trial court is only deciding that appellant did not sustain his burden of proof. Thus, as to the appellant's cause of action only, we have a negative judgment which we will not disturb unless the evidence can only point to a conclusion in his favor, which it does not, as will be seen from the discussion following. At this point, we notice

that appellant has presented to us an incomplete "con-densed recital of the evidence" in that there is no cross-examination evidence shown of two witnesses, and only a minute amount of cross-examination of two other witnesses, when in fact these witnesses were extensively examined. There are also other omissions plus quite extreme condensation. Although we do not deem these omissions fatal, these defects have hampered us in this appeal insofar as the evidence questions are concerned. Nevertheless, appellee has provided us with a complete recital of the evidence; and from a thorough examination thereof, we cannot conclude that the trial court was in error in denying the appellant relief on his complaint.

Appellant also urges that the decision and award of damages to the appellee by the trial court is not sustained by sufficient evidence. In this regard, appellant asserts that since appellee offered no evidence of damages suffered by virtue of appellant's taking of the brick pursuant to his writ of replevin, he could not properly recover damages therefor. In support of this proposition, appellant cites the general rule that one who seeks special damages has the burden of proving such damages. *Moorman Mfg. Co.* v. *Barker* (1941), 110 Ind. App. 648, 659, 40 N. E. 2d 348. Appellant thus asserts that this rule necessarily applies to actions in replevin, and more particularly, the case at bar, citing *Buck* v. *Young* (1891), 1 Ind. App. 558, 27 N. E. 1106 and *Warner* v. *Warner* (1937), 104 Ind. App. 252, 10 N. E. 2d 773, as authority for this proposition.

*Buck* v. *Young, supra,* at p. 561 simply states that: "although damages be claimed, if none be proved, none need be found in the verdict." This case concerned the propriety of a *complaint* in replevin, and certain evidentiary questions concerning the *plaintiff's* right to

recover. There is no issue which even remotely relates to the question at bar concerning a defendant's right to recover damages in a replevin action when he has not submitted evidence relative thereto.

The *Warner* case, *supra*, as it most nearly pertains to the instant case, concerned an instruction given to the jury in a replevin action. The instruction in question related to the jury that since the defendant claimed his *title* to the property in issue through a contract, he had to establish such contract by a fair preponderance of the evidence. This court, in its reasoning stated at p. 258:

> "Here, any defense may be made under the general denial, however, because it may be so made does not change its affirmative character . . . The defense under the law had any number of avenues open to it but it undertook to establish an affirmative one and it must accept all that goes with it. The necessity of establishing this affirmative defense to the satisfaction of the jury by a preponderance of the evidence was one of these."

We are not here concerned with an instruction to a jury involving the preponderance of the evidence; nor are we likewise concerned with a trial by jury and the necessary safeguards accompanying such. Nor are we confronted with an "affirmative defense" of "title" to the property which, in certain cases, must be placed in issue separately. *McFadden* v. *Ross* (1886), 108 Ind. 512, 8 N. E. 161. We must therefore state that neither *Buck* nor *Warner*, *supra*, are authority for appellant's proposition in that they do not concern the issue presented herein. We learn from the former that there must be evidence concerning damages before they may be awarded, and from the latter, we find that where the defendant undertakes to establish his title to prop-

erty by a contract, he must prevail on this affirmative allegation by a preponderance of the evidence.

Judgment for defendant with an award of damages was entirely proper in the instant case, although defendant-appellee introduced no evidence of damages. The statute concerning the type of judgment which may be entered in a replevin action is as follows:

> "In an action to recover the possession of personal property, judgment for the plaintiff may be for the delivery of the property, *or* the value thereof in case a delivery can not be had, and damages for the detention. *When the property has been delivered to the plaintiff, the defendant claims a return thereof, judgment for the defendant may be for the return of the property, or its value in case a return can not be had, and damages for the taking and withholding of the property*. Acts 1881, (Spec. Sess.) ch. 38, §444, p. 240" (Burns' §2-2510) (our emphasis)

Notice that the statute speaks in the alternative in that there may be a judgment for the defendant for the return of the property *or* for the value of such in case a return "can not be had". A general denial submitted by the defendant in a replevin action places in issue the *entire* question of the right to possession of the property, including the question of damages for the taking or detention of such property. *Jackson* v. *Morgan* (1906), 167 Ind. 528, 533, 78 N. E. 633. The damages, as can be seen from the statute, may be awarded to *either* party. Obviously no damages can be awarded if there is no evidence of such. *Buck* v. *Young, supra.* Nevertheless, because of the nature of the case at bar, it was not necessary that the defendant-appellee submit proof of damages. First, we reiterate the applicable rule that, when *both* parties move for a finding at the close of plaintiff's submission of the evidence, the trial judge may properly

weigh the evidence as presented by the plaintiff because the rule of considering only the plaintiff's evidence most favorable to him does not prevail. *Wilson, Admx.* v. *Rollings, supra.* It is an obvious rule of evidence that:

> "If a fact in issue is established by competent and relevant evidence, it matters not which party introduces the evidence or for what other purpose the evidence was offered." *Fetter* v. *Power*s (1948), 118 Ind. App. 367, 381, 78 N. E. 2d 555. (citing cases)

In the instant case, plaintiff-appellant proved the defendant's case in that the former showed by parol and written evidence (especially by the contract), that the defendant was entitled to an award of damages for the brick which were recovered by appellant before the suit and by his affidavit for immediate possession.

The difference of opinion between the parties' rights which prompted this litigation herein necessarily involves a disagreement concerning the interpretation of the contract of purchase. Appellant claims that he contracted to purchase approximately one million seventy thousand (1,070,000) "good, whole, usable bricks" and had paid one-half of the contract price and didn't receive 535,000 "good bricks". A simple reading of the contract, keeping in mind the rules governing its interpretation, plus an examination of the evidence introduced at the trial, indicate that appellant only purchased "walls" of brick from certain buildings of which appellant *thought* there were approximately one million seventy thousand (1,070,000) good, usable, used brick.

It is a fundamental rule of interpretation of contracts, that an ambiguous contract is construed most

strongly against the party who writes the contract. *Smith* v. *Sparks Milling Co.* (1942), 219 Ind. 576, 39 N. E. 2d 125. Appellant (a nonpracticing lawyer) wrote the contract herein. This contract could be termed ambiguous in that it calls for a purchase of brick from specific walls of which the evidence shows did not contain one million "good, usable brick". The term "used brick" as found in the contract is not defined therein. Here again, we have an ambiguity which should be construed against the scrivener.

It is also axiomatic that the intention of the parties is determined from the language of the *whole* contract. *Walb Const. Co.* v. *Chipman* (1931), 202 Ind. 434, 175 N. E. 132. Further, it is a general rule that words of particular description will control more general terms where both cannot stand together. *Hornet* v. *Dumbeck* (1907), 39 Ind. App. 482, 78 N. E. 691. The terms "one million seventy thousand used brick, more or less" are certainly general and somewhat ambiguous. There could be "more" or there could be "less" than one million seventy thousand. However, it is definite, from the surrounding evidence introduced at the trial and from the instrument itself that the brick sold were to come from specific buildings to be wrecked. The terms which warrant this conclusion are emphasized in the contract quoted above and for further emphasis are as follows:

> "William Clark is now in the process of wrecking certain buildings located at 1801 English Ave., and securing therefrom, a quantity of used brick . . . One Million seventy thousand (1,000,070,000) (sic) used brick, more or less, from the buildings to be wrecked . . . total cost to be paid for this used brick shall be $8,000.00 . . . It is understood the brick to be delivered will come from (a) the interior walls of the main building and the inside foundation of the main building; (b) and the complete building, both interior and exterior of the power plant;

(c) and the 4' foundation wall of an additional steel building . . ."

There is substantial evidence in the record to support the conclusion that appellant received *all* or most of the brick from the walls wrecked by appellee as enumerated in the contract after his suit and affidavit for immediate possession. Further, it appears that it was appellant's agent who estimated the probable number of brick in the wall. It seems that this count was erroneous, in that in fact there were fewer good, usable brick than appellant's agent thought existed. ". . . (T)he mere improper use of a term cannot be permitted to control the construction of an agreement, when the meaning of the parties is palpable." *Cones* v. *Vadosdol* (1853), 4 Ind. 248, 251. The term "one million seventy thousand" was obviously an improper term in that the number of brick in the specific walls enumerated in the contract did not exist. The intent of the parties was to contract to buy and sell all the brick from specific walls . . . no more, no less. See Burns' §58-202 (Acts 1929, ch. 192, §18, p. 628.)

The Uniform Sales Act governed the transaction between these parties. In regard to the point of time that the right to possession to the property passed to appellant from appellee, it is obvious that appellant did not have a "right to possession" of the brick sufficient to prevail in an action in replevin until the walls had been wrecked. Burns' §58-203 provides:

"Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer: . . . Rule 2. Where there is a contract to sell specific goods and the seller is bound to do something to the goods, for the purpose of putting them into a deliverable

state, the property does not pass until such thing be done."

The walls of brick had to be wrecked before they were in a "deliverable state". Also, the contract specifically recites that appellee was to wreck the walls. Therefore, the seller was "bound to do something to the goods, for the purpose of putting them in a deliverable state." With this statutory rule of intention as a basis, and no intention of the parties appearing to the contrary, it necessarily follows that the brick passed when the walls were wrecked. One Meredith Ballinger, a witness for the appellant, testified that the power plant was only partially wrecked when he visited the site with the deputy sheriff to remove the brick pursuant to the affidavit for immediate possession. Therefore, these brick could properly be held to yet belong to the appellee. This is affirmative evidence from the appellant's witness indicating that no right to possession existed in appellant's favor as to the brick remaining in the walls.

The evidence further tends to indicate that appellant received all, or at least most, of the brick from the wrecked walls as enumerated in the contract. There is also evidence from appellant's witnesses tending to show that by the affidavit for immediate possession, appellant's agent caused brick to be removed from the site that did not belong to appellant. Thus, the record substantiates the conclusion that appellant received most, if not more, brick than he was entitled to receive under the contract. However, appellant had tendered only one-half ($4,000) of the agreed total consideration ($8,000). Therefore, a $2,000 money judgment for appellee was certainly proper.

Also, the evidence indicates that "a return (could) not be had" since appellant had caused the brick to

be placed in buildings that he was constructing. There-fore, the only alternative under the judgment statute (§2-2510, *supra*) is an award of damages.

Appellant's argument for reversal fails in another respect. In submitting evidence under his theory that he had contracted to purchase one million seven-ty thousand (1,070,000) good, usable brick, ap-pellant brought out that many were useless be-cause of breakage. He thus theorizes that because so many brick were broken, he received even fewer than he was entitled to under the contract. In answer to this argument, it has already been concluded that ap-pellant obviously purchased "walls" of brick and not a specific number. However, we note in passing that much of the breakage was chargeable to appellant. The Uniform Sales Act provides that after property is transferred to the buyer, he bears the risk of loss. Burns' §58-206, Acts 1929, ch. 192, §22, p. 628. Ap-pellant submitted evidence that from the tearing down of the walls to the final laying of the cleaned brick, they were handled at least five (5) separate times. Title was in appellant after the walls were torn down and he could not properly charge appellee for breakage.

Appellant utilized a fair market value cost basis in attempting to show that the judgment for damages was excessive and not sustained by sufficient evi-dence. He introduced evidence that the usual price of good, usable used brick was eight-tenths (0.8) of one cent. He then surmises that on this cost basis, the judge could only award a Sixty-Four ($64) Dollar judgment for appellee, taking into consideration the

number of brick replevied by his affidavit. Notwithstanding our conclusion above which precludes any attention to specific numbers of brick bought, the only conclusion that can be reached taking the above evidence at its face value is that appellant might have contracted to pay a higher price for the used brick than the market rate. Further, the evidence concerning fair market value of used brick is irrelevant because the contract of purchase enumerating the consideration to be paid governed this transaction. C. J. S., *Contracts*, §361. The trial judge evidently based his judgment on the contract price, in fact awarding even less to the appellee than called for in the instrument. Therefore, the award of damages was not excessive.

If we take appellant's evidence in its most favorable light, the only conclusion that can be drawn regarding the above argument is that appellant made a bad bargain. This has never been a cause for reversal.

"The rule, that where one gets the thing for which he knowingly bargains he can not complain, is a rudimental one . . ." *White et al* v. *The Butler University* (1881), 78 Ind. 585, 589.

Appellant has not demonstrated a right to prevail in this appeal especially because of the failure to show that the evidence and the contract of purchase necessarily warrants the conclusion that he purchased one million seventy thousand (1,070,000) good, usable brick. With this failure in his argument, the whole foundation of his case collapses and the result is inevitable that appellee was entitled to an affirmative award of damages.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

Bierly, C. J., Mote and Smith, JJ. Concur.

ON PETITION FOR REHEARING.

HUNTER, J.—Appellant's petition for rehearing of this cause argues that we erroneously decided this case because we wrongly held that "appellant had received all of the bricks or walls called for under the contract." Appellant's petition relies solely on his erroneous notion of our holding in the opinion. We did not hold unqualifiedly that appellant received all of the brick as enumerated in the contract. The statement on this point is quoted verbatim as follows:

> "The evidence further *tends to indicate* that appellant received all, *or at least most,* of the brick from the wrecked walls as enumerated in the contract. *There is also evidence* from appellant's witnesses *tending to show* that by the affidavit for immediate possession, *appellant's agent caused brick to be removed from the site that did not belong to appellant.*" (emphasis added herein)

Therefore, because appellant has misconstrued the holding of this case, on which holding he places his sole reliance for a rehearing, we must deny said petition for a rehearing.

Petition for rehearing denied.

Bierly, C. J., Mote and Smith, JJ. Concur.

NOTE.—Reported in 209 N. E. 2d 528. Rehearing Denied in 210 N. E. 2d 260.