HUYLER'S *v.* GAS APPLIANCE SUPPLY CORP.

[No. 668A98. Filed May 6, 1970.]

*Alan W. Boyd, Robert S. Ashby,* and *James E. Hughes* and *Barnes, Hickam, Pantzer & Boyd,* of counsel, all of Indianapolis, for appellant.

*Patrick J. Smith, James R. McClarnon, Smith, Morgan & Ryan,* of counsel, all of Indianapolis, for appellee.

HOFFMAN, P.J.—This appeal arose from a decision against plaintiff-appellant on its complaint, and for defendant-appellee on its counterclaim.

The controversy involved the interpretation of a contract between the parties for the sale of a business by appellant to the appellee.

The pertinent facts are as follows:

Negotiations were begun in 1962, between the parties to this appeal for the purchase of a business owned and operated by the appellant in the State of Ohio. A contract evolved out of these negotiations and was executed on November 27, 1962.

Following the consummation of the sale, appellant was served with a tax statement in 1963. Appellant alleges that because of its familiarity with Indiana treatment of property

taxes (assessed in one year, payable the following) it paid them, assuming that, under the contract, it was obligated to do so. It alleges further that it later determined the taxes paid were, in fact, for 1963, and demand was made on the appellee. When appellee refused to pay the taxes, appellant filed its complaint alleging that under the contract appellee owed the amount paid for such taxes by appellant.

Appellee then filed its answer and counterclaim alleging it had incurred expenses because of appellant's alleged failure to live up to its agreements under the contract; specifically in that it had failed to set aside vacation pay for the second half of the year, and, secondly, that it had failed to credit certain items returned for poor workmanship.

The issues were closed and trial was to the court, without the intervention of a jury. On October 19, 1967, the trial court entered its findings of fact and conclusions of law.

The trial court concluded that the law was with the defendant on both the complaint and the counterclaim. Further, the court made the following detailed findings of fact:

## "FINDINGS OF FACT

"1. That plaintiff is a New York corporation duly authorized to do business in the State of Indiana.

"2. That defendant is an Indiana corporation with its principal place of business at 5420 North College Avenue, Indianapolis, Indiana.

"3. That on the 27th day of November, 1962, plaintiff and defendant, using the name Production Plating Works, Inc., entered into a contract and that thereafter in lieu of adopting the name of Production Plating Works, Inc. defendant adopted the name Gas Appliance Supply Corporation, under the terms of which contract defendant purchased and plaintiff sold certain assets of a manufacturing concern located in Lebanon, Ohio.

"4. That during negotiations leading to the contract executed November 27, 1962, the plaintiff submitted to defendant a contract under the terms of which defendant would have been obligated to assume all liabilities for real and personal property taxes payable after December 31,

1962, but upon protest by defendant that this would obligate defendant to pay taxes payable in 1963 which were chargeable to 1962, it was mutually agreed in the final draft that the buyer would assume only all liabilities for real and personal property taxes except taxes for 1962 payable in 1963, which the seller would pay.

"5. That at the time of execution of the contract plaintiff owed no personal property taxes payable in 1962 which could have imposed an obligation under the terms of the contract for plaintiff to pay any taxes.

"6. That the parties negotiated on the assumption that personal property taxes in Ohio were based upon values as of December 31 of the year before payment to the taxing authorities was made.

"7. That in conducting negotiations the parties interpreted this law to be that Ohio personal property taxes were like Indiana personal property taxes in that taxes were paid in the year following the year in which they were assessed.

"8. That the parties mutually interpreted their contract to require plaintiff to pay personal property taxes physically payable in 1963 and that in furtherance of this mutual interpretation plaintiff's accountants prepared and filed plaintiff's tax return for personal property taxes physically payable in 1963 based on valuations of 1962 despite a request by defendant that his accountants be allowed to prepare a return in order to become familiar with the books of the corporation and procedures of the corporation.

"9. That plaintiff physically paid personal property taxes payable in 1963 based on valuations in 1962 and furnished evidence of payment to defendant upon defendant's request.

"10. That at the time of payment of the personal property taxes on April 15, 1963, plaintiff made no demand upon defendant for reimbursement of such taxes.

"11. That thereafter the State of Ohio assessed a deficiency against plaintiff for unpaid personal property tax which, after a hearing, plaintiff paid, again without making demand therefor upon defendant.

"12. That after July 1, 1963, long after the payment of the original assessment for personal property taxes in April and after demand for payment of the deficiency by the Ohio taxing authority, plaintiff made demand upon defendant for reimbursement of the personal property taxes payable in 1963.

"13. That most of the values for personal property taxes payable in 1963 were values at the end of plaintiff's fiscal year, which was June 30, 1962, and that all other values upon which such personal property tax liability were based were values as of December 31, 1962.

"14. That defendant owned the assets upon which personal property tax liability was based as of December 31, 1962, and in fact, for several days thereafter.

"15. That the various drafts and final contract were prepared by plaintiff.

"16. That under the terms of the contract the personal property taxes physically payable in 1963 were the obligation of plaintiff to pay.

"17. That pursuant to the terms of the contract, specifically Article III, Section 2 thereof, plaintiff was obligated to advise defendant prior to the day of closing of the existence of claims by plaintiff's customers, which claims arose when plaintiff's customers returned defective merchandise manufactured prior to the closing to the plaintiff prior to the day of closing for credit or reworking or replacing.

"18. That plaintiff failed so to advise defendant and, in fact, such merchandise was returned in the amount of $466.24 which defendant was obligated to rework and replace and return to plaintiff's prior customer.

"19. That plaintiff admitted its obligation to defendant for such reworking and replacing of merchandise.

"20. That in accordance with the terms of the contract, specifically in Article VI, Section 5 thereof, plaintiff agreed to preserve its employment force for the benefit of the defendant.

"21. That pursuant to the terms of the contract, more specifically in Article II, Section 2(i) it was agreed that the defendant would not be obligated to pay any vacation pay to the employees of plaintiff for work performed by the employees during the second half of 1962.

"22. That on December 26, 1962, plaintiff promised its employees that plaintiff would fulfill its obligations with respect to the payment of all amounts of accrued vacation pay due employees through December 31, 1962.

"23. Thereafter and after concluding the sale, the plaintiff failed to pay the vacation allowances which accrued for work performed in the second half of 1962 and prior to the day of closing.

"24. That in order to retain the work force defendant was obligated to make payment to the employees of plaintiff for the vacation pay for the second half of 1962 when the employees took their vacations in July of 1963.

"25. That the amount of vacation pay so paid by defendant for work performed by the employees during the second half of 1962 was $3,891.88.

"26. That defendant made demand upon plaintiff for the payment of such vacation pay in July of 1963 at the time when the employees took their vacation."

In its conclusions of law the trial court found that:

"1. That the law is with the defendant on the complaint.

"2. That the law is with the defendant on the counter-claim.

"3. That personal property tax in Ohio for corporations is assessed on values in existence in the year prior to the year in which payment of the personal property tax is made. If the corporate fiscal year ends prior to December 31 of the year prior to the year in which taxes are paid, the valuations are those of the end of the fiscal year; if the fiscal year ends December 31 in the year prior to the year in which taxes are physically payable the valuations for tax purposes are those of December 31.

"4. The language of the contract in regard to the payment of personal property taxes is ambiguous and therefore is construed most strongly against plaintiff, the party which prepared it, and doubt is resolved against plaintiff.

"5. The contract in regard to the payment of personal property taxes is ambiguous. This Court has examined the interpretation placed upon it by the parties and expressly finds that in connection with such interpretation the parties mutually interpreted the contract to require the payment of personal property taxes payable in 1963 by palintiff [plaintiff] since plaintiff prepared and filed the return, physically paid the tax, and refused to permit defendant's accountants to prepare and file the return, did not turn over records necessary for the preparation of such tax to the defendant, and upon request furnished evidence of payment of the tax to the defendant, and finally, made no demand upon defendant for reimbursement until after the taxes had, in fact, long been paid.

"6. That plaintiff was obligated to pay personal property taxes physically payable in 1963 and that defendant

is entitled to judgment on plaintiff's complaint, costs against plaintiff.

"7. That plaintiff breached the contract, specifically in Article III, Section 2, in failing to advise defendant prior to the day of closing of the existence of claims by plaintiff's customers, which claims arose when plaintiff's customers returned defective merchandise manufactured prior to closing to plaintiff prior to the day of closing for credit or reworking or replacing and that defendant incurred expenditures in the amount of $466.24 as a result of such breach and is entitled to a recovery of such sum from plaintiff.

"8. That plaintiff breached the terms of the contract, specifically the provisions of Article VI, Section 5, in which it agreed to preserve its employment force for the benefit of the buyer and Article II, Section 2(i) in which it agreed that defendant would not be obligated to pay any vacation pay to the employees for work performed by the employees during the second half of 1962 in that plaintiff failed to pay the vacation pay due its employees for the second half of 1962 and that defendant was obligated to and did pay the employees such pay in order to preserve the work force and as a result thereof expended $3,891.88 which sum it is entitled to and it is hereby adjudged it shall recover from plaintiff.

"9. That defendant is entitled to recover six percent (6%) interest on the sums hereinabove set out."

The court awarded defendant-appellee damages in the amount of $4,358.12, plus 6% interest.

Appellant filed its motion for a new trial alleging as error 1) the decision of the court on the complaint is contrary to law; 2) the decision of the court on the complaint is not sustained by sufficient evidence; 3) the decision of the court on the counterclaim is contrary to law; 4) the decision of the court on the counterclaim is not sustained by sufficient evidence; and 5) there is error in the assessment of damages, the amount being too large.

Appellant's sole assignment of error is the overruling of its motion for a new trial.

Appellant argues that where a contract provision is clear and unambiguous on its face, the court cannot go behind the language to determine a subsequent construction of the parties. Appellant further argues that appellee had expressly agreed to pay taxes for 1963. Relative to this, appellant argues that the trial court failed to properly construe Ohio law governing property taxes, their assessment and payment.

Finally, as to the counterclaim, appellant alleges that the findings and jugdment with respect to appellant's obligation for payment of vacation pay, and to pay for returned defective merchandise was not supported by sufficient evidence and was contrary to law.

With respect to the issue of payment of taxes, the contract provision which is of paramount concern to us here reads as follows:

### "ARTICLE II.

*     *     *     *     *

"*Section 2.   Assumption of Liabilities.*

In addition to payment of the purchase price provided in Section 1 of this Article, the Purchaser, as a further consideration for the Property to be Sold, will assume, as at the Date of Closing, the following, but no other obligations of the Seller:

(a) All liabilities of the Seller under the Leasehold Interests, apportioned to the Date of Closing, excepting real estate taxes payable June 20, 1963, which shall be paid by the Seller.

*     *     *     *     *

(d) All liabilities for real and personal property taxes after the Date of Closing, excepting taxes for 1962 payable in 1963, which the Seller shall pay.

There are expressly excluded from the liabilities of the Seller, assumed by the Purchaser, . . . ."

We are initialy constrained to point out that "[a] literal or technical construction of an isolated or special clause should not be indulged to defeat the true meaning of a contract. The true meaning of a contract is to be ascertained from a consideration of all its provisions in

order to carry out the true intention of the parties gathered from the whole instrument." *Sindlinger* v. *Dept. of Financial Institutions*, 210 Ind. 83, at 105, 199 N. E. 715, at 724, 105 A.L.R. 501 (1936).

In its Conclusion of Law No. 4, the trial court held the personal property tax provision ambiguous.

There are two types of ambiguities—patent and latent. A "patent ambiguity" is apparent on the face of the instrument without resort to extrinsic evidence. A "latent ambiguity" was aptly described in *Weber* v. *Adler*, 311 Ill. 547, 143 N. E. 95, at 96 (1924):

"A latent ambiguity occurs where a writing appears on its face clear and unambiguous, but which, in fact, is shown by extrinsic evidence to be uncertain in meaning, or where a description apparently plain and unambiguous is shown to fit different pieces of property, and in such case, the ambiguity being raised by extrinsic evidence, the same kind of evidence may be admitted to explain it or identify the property referred to in the writing." (Citing authorities.)

In the instant case, the ambiguity was of the latter type, and the trial court properly so held.

In resolving the ambiguity, according to Conclusion of Law No. 4, the trial court construed the ambiguous language against the party which prepared the instrument—the plaintiff. The overwhelming weight of authority in Indiana holds this procedure to be not only appropriate, but necessary. See: *Smith* v. *Sparks Milling Company*, 219 Ind. 576, 39 N. E. 2d 125 (1942); *Fineberg* v. *Clark*, 137 Ind. App. 528, 209 N. E. 2d 528, 210 N. E. 2d 260 (1965); *Noblesville Milling Co.* v. *Johnson*, 116 Ind. App. 437, 65 N. E. 2d 250 (1946).

Having properly determined that a latent ambiguity existed in the contract, specifically Article II, Section 2(d), the trial court proceeded to review extrinsic evidence for the purpose

of determining the intent of the parties, subject to the rule of construction noted above.

The evidence established a number of factors, as found by the trial court, which helped determine the intent of the parties. The essence of this evidence was that the personal property tax physically payable in 1963 would remain a liability of the seller. The purpose of this provision was not so much concerned with determining tax liabilities for their own sake, but, instead, to establish a value as part of the consideration for the sale. Regardless of which year the appellant believed the tax was for, it remains that it fully intended to pay that amount and the consideration paid by the buyer-appellee was increased proportionately.

The judgment of the trial court with respect to the complaint is not contrary to law for the reasons hereinabove set forth. Appellant's assertion that the decision of the court on plaintiff-appellant's complaint is not sustained by the evidence presents no question since this was a negative decision. *Pokraka* v. *Lummus Co.*, 230 Ind. 523, 104 N. E. 2d 669 (1952).

We shall next consider the counterclaim. Four sections of the contract concern us. The first is Article III, § 2, and in connection therewith, Article II, § 2(c). The foregoing sections read as follows:

## "ARTICLE III.

\* \* \* \* \*

*"Section 2. Financial Statements.* The audited financial statements of Production Plating Works Division of Huyler's for the years ended June 30, 1961, and June 30, 1962, prepared by Messrs. Ernst & Ernst, substantially *set forth the true financial condition of the assets and liabilities of Production Plating Works Division of the Seller at such dates and the results of operations for the respective periods involved, subject to comments contained in each such report.* Except to the extend indicated therein and the notes thereto, such reports were prepared in accordance with accepted principles of accounting consistently maintained through-

out the periods involved. The unaudited statement of profit and loss of the Seller's Production Plating Works Division for the three months ended September 30, 1962, prepared by the Seller and delivered to the Purchaser, was prepared on the same basis as interim profit and loss statements previously prepared by the Seller and accurately and fairly presents the financial status at September 30, 1962, and results of operations of the Division for such three months period, subject to the auditor's ordinary year-end adjustments." (Emphasis supplied.)

"ARTICLE II.

\* \* \* \* \*

"*Section 2. Assumption of Liabilities.*

\* \* \* \* \*

"(c) The obligation to rework or replace any returned merchandise manufactured by or delivered to customers by the Seller prior to the Date of Closing, provided that such merchandise will be returned within ninety (90) days after the Date of Closing and provided further that the aggregate cost to the Purchaser of reworking or replacement of such merchandise shall not exceed $5,000."

In Findings Nos. 17, 18 and 19 the trial court found that appellant was obligated under Article III, § 2, to advise appellee of defective merchandise as a liability of the business, and held, therefore, in its Conclusion of Law No. 7 that appellant's failure to so notify appellee constituted a breach of the contract and damages were awarded.

We cannot agree, as a matter of law, with this conclusion. Article III, § 2, imposes only a duty to provide financial statements. There is no evidence that such financial statements were not delivered pursuant to the contract or that they were fraudulent or intentionally misleading. In fact, noting the apparent effect of Article II, § 2(c), we are constrained to hold that the parties contemplated just such a situation and established an indemnity to the extent of $5,000, which was a part of the bargained for consideration. For these reasons we hold there was error in the ruling of the trial court on this paragraph of the counterclaim.

Finally, appellant argues that Article II, § 2 (i), and Article VI, § 5, of the contract did not impose a duty to pay vacation pay to appellant's employees for the last half of 1962. These sections read as follows:

"ARTICLE II.

\* \* \* \* \*

*"Section 2. Assumption of Liabilities.*

\* \* \* \* \*

(i) All liabilities, if any, under the Collective Bargaining Agreement between the Seller and United Steel Workers of America, dated August 1, 1962, including, without limiting the generality of the foregoing, all obligations with respect to insurance upon or for the benefit of employees, all obligations to pay wages, salaries, bonuses, vacation pay, union dues, holiday pay and obligations with respect to employee bond accounts."

"ARTICLE VI.

\* \* \* \* \*

*"Section 5. Preservation of Business.* The Seller will use its best efforts (without making any commitment on behalf of the Purchaser) to preserve intact the business organization of the Seller and to keep available to the Purchaser the services of the employees to the Seller."

The trial court found that the seller-appellant had agreed to generally preserve its work force, or, conversely, not do anything to disrupt the work force. Specifically, under Article II, § 2 (i), appellant was responsible under the contract of sale to pay vacation pay for the last half of 1962 to its employees. Failure to so do, as the trial court concluded in its Conclusion of Law No. 8, was breach of *both* terms here applicable since it was a specific breach of Article II, § 2 (i), and, generally, tending to be a disruptive influence on the labor force, was a breach of Article VI, § 5. We agree with the reasoning and conclusion of the trial court with respect to this issue, and there was no error in the ruling on this paragraph of the counterclaim.

The error "in the assessment of damages, the amount being too large" was not briefed or argued by appellant and is, therefore, waived. *Barrett et al.* v. *Dorr et al.*, 140 Ind. App. 295, 212 N. E. 2d 29 (1967), (transfer denied).

For the foregoing reasons, we must affirm the judgment of the trial court on all issues with the exception of the "reworked merchandise" issue. On this point we must reverse the judgment of the trial court with the instruction that the judgment be corrected to reflect this determination.

The judgment of the trial court is affirmed as to the finding and judgment on the complaint and the second paragraph of defendant-appellee's counterclaim; and the judgment of the trial court is reversed as to the first paragraph of defendant-appellee's counterclaim, with instructions to the trial court to restate its findings of fact and conclusion of law, and enter judgment in accordance with the views expressed in this opinion.

Judgment affirmed in part, and reversed in part with instructions.

Pfaff, Sharp and White, JJ., concur.

NOTE.—Reported in 257 N. E. 2d 831.