Michael von GONTEN, Plaintiff-Appellee, Cross-Appellant,

v.

RESEARCH SYSTEMS CORPORATION, Defendant-Appellant, Cross-Appellee.

Nos. 83–1784, 83–1869.

United States Court of Appeals, Seventh Circuit.

Argued April 13, 1984.

Decided July 26, 1984.

David E. Gray, Bowers, Harrison, Kent & Miller, Evansville, Ind., for plaintiff-appellee.

Barbara Scott Bison, Paxton & Seasongood, Cincinatti, Ohio, for defendant-appellant.

Before WOOD and CUDAHY, Circuit Judges, and NICHOLS,* Senior Circuit Judge.

NICHOLS, Senior Circuit Judge.

Defendant below appeals from a judgment which the United States District Court for the Southern District of Indiana entered on March 11, 1983, on a jury verdict awarding plaintiff $61,375 for damages resulting from a breach of plaintiff's employment contract. Plaintiff below cross-appeals, alleging that the district court erred in granting defendant's motion for a directed verdict as to plaintiff's claim for punitive damages. *We affirm.*

I

Defendant Research Systems Corporation (RSC) is a market research firm located in Evansville, Indiana. RSC provides its clients, who are mostly manufacturers of packaged goods, with marketability estimates of their new products and copy testing services for their television commercials. To provide these services, RSC uses research models and sophisticated formulae for analyzing consumer behavior.

Plaintiff Michael von Gonten (von Gonten) was RSC's senior vice-president and director of Client Service and Basic Research. On April 27, 1979, he entered with RSC into a one-year written Employment Agreement (the contract) which provided, *inter alia,* for automatic one-year renewal unless either party notified the other in a writing sent by registered or certified mail not less than 6 months before the desired termination date.

In July 1979, RSC's chairman, Reginald Collier, sent by certified mail a letter to von Gonten, stating that he wanted to review and revise von Gonten's contract before January 1980. Collier explained that he

---

* The Honorable Philip Nichols, Jr., of the United States Court of Appeals for the Federal Circuit, is sitting by designation.

sent the letter by certified mail because the "contract required" it. While this notice could have been read as notice that the contract was not to be renewed, or would be renewed only on renegotiated terms, it seems nobody so construed it until RSC, far too late, did so in briefing this appeal.

Because of this letter, and also because of increasing job dissatisfaction, von Gonten hired in January 1980 an executive search firm which arranged for a meeting between him and the president of an RSC competitor, the Bases Division of Burke Marketing Service, Inc. (BMSI) of Cincinnati, Ohio. Von Gonten extensively and secretly interviewed with BMSI during the last week of March and the first week of April 1980.

In early April, Collier sent to the president of RSC, Margaret Blair, a handwritten note about a "Supplement or Addendum" to von Gonten's contract, which Blair gave to von Gonten on April 9, 1980. The note stated, among other things, that von Gonten's contract for the 1979–1980 year would have a ceiling of $90,000 total compensation, including base salary. Von Gonten's compensation for the fiscal year ending October 1, 1979, had consisted of a $58,500 base salary and a $12,600 "incentive bonus." As this was a thin year for RSC, von Gonten would have done much better in a good year, which it was anticipated the next would be.

On May 9, 1980, von Gonten sent to Blair via registered mail, as the contract required, a letter of resignation. Although the letter did not specify its effective date, von Gonten indicated in a handwritten note to Blair, dated May 14, 1980, that he intended to live up to the letter of the contract, i.e., to serve for 6 months from the notice date. Blair, concerned about allowing von Gonten to have access to sensitive information, clients, and projects while becoming an employee of a competitor, asked him to work at home while completing his assigned projects.

On July 25, 1980, Blair sent von Gonten a letter terminating his employment:

For various reasons of which you are aware, including but not limited to the fact that you are going to work for the Bases Division of Burke, we hereby terminate your employment immediately.

Until this point, von Gonten had received all compensation due to him. Afterwards, however, RSC withheld von Gonten's final paycheck as a set-off for $7,500 advanced to him against his second year bonus, and it refused to pay von Gonten any part of his bonus for the second contract year.

On November 15, 1980, von Gonten brought the present action against RSC. The jury returned a verdict in von Gonten's favor, finding him entitled to a $61,500 second year bonus, $6,750 in deferred profit sharing, and the amount of the withheld paycheck. The contract base pay was not at issue, because von Gonten went from RSC to BMSI without a material break in service. RSC appeals from the judgment entered on this jury verdict. Von Gonten cross-appeals, seeking punitive damages.

## II

### A

The first issue we consider is whether von Gonten, by interviewing with and accepting a job offer from a firm which competes with his employer, materially breached his contract in such a way as to justify an immediate termination of his employment. Von Gonten argues that accepting employment with BMSI was not a breach of his contract; RSC argues it was. We begin by looking to the terms of the contract.

Paragraph 1(b) of the Employment Agreement states the most basic understanding of the parties that von Gonten would—

not become involved in any other business or other activity, during the term of his employment, which may, in any manner, conflict or be competitive with the performance of the duties of said employee.

Paragraph 8 of the same agreement provides:

This Agreement shall terminate and all of employee's rights to receive compensation or any other benefits hereunder shall be terminated in the event that Employee:

\* \* \* \* \* \*

(b) has been guilty of dishonesty involving either personal gain or activities which would benefit competing enterprises to that of the Corporation \* \* \*.

■ Under Indiana law, which binds us in this diversity case, *Ryan v. J.C. Penney Co.*, 627 F.2d 836, 838 (7th Cir.1980), the question as to whether an employee has materially breached an employment contract and whether that employee can thereafter be discharged for cause is a question of fact for the jury if reasonable persons might differ as to whether the alleged misconduct justified discharge. *Rochester Capital Leasing Corp. v. McCracken,* 156 Ind.App. 128, 295 N.E.2d 375, 378 (1975). RSC argues that because the contract unambiguously supports its right to fire an employee who looks for employment elsewhere, that question should never have gone to the jury. We disagree. Contractual expressions such as these are ambiguous on their face: it is not beyond reasonable interpretation to find that the search for or acceptance of another job to commence in the future is not "competitive with the performance" of one's present job, or that such acts do not "benefit competing enterprises." Certainly it was a predictable if not inevitable response to the notice received in July 1979 and in subsequent communications, which clearly indicated that von Gonten's pay expectations from the April 27, 1979 contract were due to be trimmed as soon as RSC acquired the right to do this. Thus, because the terms in the Employment Agreement are not "express and unambiguous prohibitions" clearly intended to prevent von Gonten from seeking or accepting other employment during the life of the contract, to take effect after the contract ended, the district judge properly submitted the issue to the jury.

■ Von Gonten argues that because of fatal procedural inadequacies on RSC's behalf, we do not need to make any further review, and in particular, that we do not need to consider the sufficiency of the evidence on which the jury based its decision. Nevertheless, and although RSC argues that the evidence conclusively indicates that von Gonten engaged in "dishonesty involving \* \* \* activities which would benefit competing enterprises" in violation of paragraph 8(b), we note that there is much testimony that von Gonten not only never became involved in any business or activity conflicting with RSC before RSC terminated his employment, but that he never called upon any person or firm for the purpose of soliciting, selling, or servicing the accounts of customers of another company before his termination. We believe that this testimony provides sufficient evidence for the jury to have found that von Gonten did not materially breach his contract with RSC and therefore remained entitled to the contract period of notice. If RSC did not want von Gonten working for it while expecting a future transfer to a competitor, it could have so provided. We note RSC drafted von Gonten's contract, so the rule of *contra proferentum* would apply. *Fineberg v. Clark,* 137 Ind.App. 528, 209 N.E.2d 528, 534, *reh'g denied,* 137 Ind.App. 528, 210 N.E.2d 260 (1965).

**B**

We next consider the correct amount of compensation due von Gonten. The Employment Agreement automatically renewed, by its terms, for an additional period of one year as of April 27, 1980. Von Gonten sent his letter of resignation on May 9, 1980. The contract required von Gonten to give his notice of resignation 6 months before a desired termination date. Although von Gonten's letter of resignation did not specify its effective date, he stated in a handwritten note to Blair, on May 14, 1980, that he intended to comply with the Employment Agreement, and testimony tends to show that von Gonten made a good faith effort to do so.

■ Because it is a fundamental principle of contract law that an injured party to a contract should receive adequate compensation so as to bring that party to where he or she would have been but for the breach, it is only proper for von Gonten to receive any compensation which would have vested in him but for RSC's improper contractual breach. Thus, on the first day of RSC's new fiscal year, which was less than 6 months from the date of von Gonten's resignation letter, von Gonten's right to his bonus for the previous fiscal year would have vested but for RSC's actions. During the 6-month notice period, moreover, RSC was supposed to continue to contribute to its "American Funds Profit-Sharing Retirement Plan" von Gonten's share of the profits, which the jury found amounted to $6,750. Unless von Gonten's discharge was justified, therefore, which the jury must have found it was not, he is entitled to his bonus and his share of the profits for the 1979–1980 fiscal year as a matter of contractual right. The jury's verdict as to the amount of damages to which von Gonten is entitled is therefore supported by law and fact.

### III

■ Von Gonten cross-appeals; he asks us to reverse a directed verdict entered on the issue of punitive damages and to remand for a new trial on this limited issue. Again, we affirm.

To allow punitive damages in addition to compensatory damages in a contract action is to follow the exception and not the general rule. In *First Federal Savings & Loan Association of Indianapolis v. Mudgett*, 397 N.E.2d 1002, 1006 (Ind.App.1979), the court stated:

> This exception is restricted to those instances in which the evidence: (1) independently establishes the elements of a common law tort, or (2) shows that a serious wrong, tortious in nature, has been committed in an instance in which the public interest would be served by the deterrent effect punitive damages would have upon the future conduct of

the wrongdoer and parties similarly situated.

Von Gonten argues at length that because a court in Indiana may grant a request for a directed verdict only if there is a total absence of evidence or reasonable inferences from the evidence in favor of a plaintiff on the issues in question, the district court may not require that von Gonten show clear and convincing evidence of tortious conduct to avoid RSC's motion for directed verdict. Although this is a correct statement of law, it is not relevant here because we believe that the district court found that von Gonten did not present *any* evidence that RSC acted tortiously either before or during terminating von Gonten's employment.

To prove that he was entitled to punitive damages, von Gonten must have been able to "place in the ultimate fact-finder an abiding conviction that the truth of * * * [his] factual contentions are 'highly probable'" *Colorado v. New Mexico*, —— U.S. ——, 104 S.Ct. 2433, 81 L.Ed.2d 247 (1984). This is the Supreme Court's definition of those words so often and so freely bandied about: "clear and convincing evidence." He must, to avoid a directed verdict, produce at least *some* evidence which could lead to an opposite conclusion. Von Gonten has not done so here. He alleges that RSC engaged in the following oppressive conduct: (1) changing the terms of his compensation for the second contract year; (2) asking him to work at home after he tendered his resignation; and (3) not allowing him to keep working for 6 months after he tendered his resignation. This evidence alone cannot lead to an inference that RSC acted maliciously or oppressively. At most, RSC made simple mistakes of law in the course of taking actions it supposed it could legally take. RSC felt it had made a mistake in providing an overgenerous method of computing von Gonten's bonus, which interfered with proper allocation of rewards to others. The communications that so irked von Gonten were efforts, however misdirected, to achieve what RSC had a right to achieve, if only it did so in the right way at the right time. We do not

believe von Gonten has introduced *any* evidence that RSC acted tortiously in terminating von Gonten's employment. We affirm the granting of a directed verdict as to this issue.

## IV

We affirm the district court's directed verdict on the issue of punitive damages because von Gonten presented no evidence from which a reasonable person could infer that RSC acted maliciously or oppressively, or other than according to a good faith mistake as to its contract rights. We affirm the district court's submission to the jury of the issue of whether von Gonten was terminated for good cause, and we hold that the jury's verdict is supported by sufficient evidence. Therefore, because the Employment Agreement was renewed on April 27, 1980, by its own terms for an additional one-year period, von Gonten is entitled to receive the benefits which would have accrued to him under the Employment Agreement during the 6 months immediately following his resignation.

AFFIRMED.